CAPITOL DODGE, INC. ET AL. *v.* THOMAS C. HALEY ET AL.
THOMAS C. HALEY ET AL. *v.* CHRYSLER CREDIT CORPORATION.

[No. 1271A281. Filed November 8, 1972.]

*Richard M. Mantel, Mantel & Semones,* of Indianapolis, for Capitol Dodge, Inc. and Bill Allen.

*Howard L. Whitecotton, Endsley, Whitecotton, Timmons & Endsley,* of Indianapolis, for Thomas C. Haley, Loren M. Haley and Edna Haley.

SULLIVAN, J.—The two lawsuits for damages were consolidated for trial below and for appeal to this Court. They involve an installment contract purchase of an automobile from defendant-appellant Capitol Dodge, Inc. and more particularly alleged fraudulent misrepresentations concerning insurance coverage made by an additional defendant, Bill Allen, a salesman for Capitol Dodge. The financing agent for the purchase and holder of the installment contract after execution was Chrysler Credit Corporation.

The record discloses that Thomas Haley, together with his parents, Loren M. Haley and Edna Haley, executed a retail installment contract on April 10, 1970 for the purchase by the son of an automobile from Capitol Dodge.[1]

---

1. Although Thomas Haley was apparently an adult, Chrysler Credit Corporation, the financing agent for the purchase desired the parents' execution of the installment contract as co-signers. The parents therefore were made a party to the negotiations and consummation of the sale to Thomas Haley.

Thomas Haley testified that he had told the salesman before the contract was signed that he had to make sure that he could have "full coverage insurance" because he didn't want to be driving and get sued, and that Allen replied "we got you all taken care of—you don't have anything to worry about."

Loren Haley testified that in the course of negotiations Haley told Allen that he wanted his son to have "full coverage" and "that [he] wouldn't have anything to do with the car unless it had full coverage insurance." According to the senior Haley, Allen assured that he had nothing to worry about, and that Thomas would be fully covered. Mr. Haley then signed the contract. Mr. Haley indicated, however, that he did not read the contract prior to signing it.

Thomas Haley testified in essence that he did not read the contract thoroughly but only looked at the top part of the contract which included the provision concerning insurance coverage. The precise contract provision concerning insurance coverage was limited to "physical damage" coverage only for the vehicle purchased by Haley. No liability coverage was afforded by the contract. The face of the contract, otherwise printed in blue ink, contained a provision in red letters near the point at which the Haleys signed as follows:

"The Insurance Contracted for in Connection With This Retail Installment Sale Does Not Provide for Liability Insurance for Bodily Injury and Property Damage"

Nothing of record, however, indicates that Haley's attention was specifically called to the exclusionary language. See *Woodruff* v. *Clark Co. Farm Bureau Coop. Assn.* (1972), 153 Ind. App. 43, 286 N.E.2d 188.

The line immediately above the space provided in the contract for the purchaser's signature read as follows:

"NOTICE TO THE BUYER: Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the contract you sign."

On May 20, 1970, Thomas Haley received a notice of cancellation of the physical damage insurance from the insurer, Car City Insurance Company of Detroit, Michigan, effective May 31, 1970.

Thomas Haley subsequently retained counsel and was advised not to drive the car without insurance but to continue payments. Thomas testified that he made one more payment on the contract. He also stated that he eventually demanded from both Capitol Dodge and Chrysler Credit that the contract be rescinded, that his down payment of $395.00 be returned to him within fourteen days; and that the sum of $495.70 representing a "trade-in" by Haley be returned to him within the same period. Haley also tendered the return of the purchased automobile. Upon refusal of his demand and having discontinued payments, he returned the car to Capitol Dodge. Chrysler Credit, in turn, repossessed the car and sued Haley for the deficiency.

Thereafter, Haley's lawsuit against Capitol Dodge and Allen was tried to a jury which returned a verdict in favor of Haley for $874.90 as compensatory damages and $2,000.00 punitive damages. Chrysler in its suit received a verdict against Haley and his parents for $1,226.44, representing the deficiency balance upon the auto. Judgments were entered upon the verdicts.

## 1. THE CAPITOL DODGE CASE

Thomas Haley is the sole plaintiff in the claim for relief against Capitol Dodge and Bill Allen. The thrust of his complaint is to the effect that he was induced to execute the contract for purchase of the automobile by the representations of the salesman, Allen, that "full coverage" insurance was provided. It should be noted that Haley sought monetary damages only, not rescission of the contract.

The sole assertions of error argued in appellant Capitol Dodge's brief are to the effect that:

1. Plaintiff Haley did not prove all the essential elements of fraud, i.e., representations, falsity, scienter, deception (reliance) and injury.
2. The award of punitive damages was erroneous.

## PUNITIVE DAMAGES NOT UNWARRANTED AS MATTER OF LAW

Because it requires little discussion, we treat appellant's assertion as to punitive damages first. As stated in *Jones* v. *Hernandez* (1970), 148 Ind. App. 17, 263 N.E.2d 759, 763:

"The Indiana punitive damages are proper where the acts of the wrongdoer are such as to indicate heedless disregard of the consequences."

In the light of what we state hereinafter, concerning the propriety of the jury's finding of fraud, we cannot say that as a matter of law that the jury was unreasonable in assessing punitive damages. In this connection, it might be kept in mind that punitive damages are not compensatory in their nature but are designed to punish the wrongdoer and to dissuade him and others from similar conduct in the future. *Indianapolis Bleaching Co.* v. *McMillan* (1916), 64 Ind. App. 268, 113 N.E. 1019. We deem such awards to be particularly appropriate in proper cases involving "consumer fraud."

## JURY NOT UNREASONABLE IN FINDING ALL ESSENTIAL ELEMENTS OF FRAUD PRESENT

With respect to the more broadly sweeping contention of Capitol Dodge we treat separately those elements of fraud which Capitol asserts were unproved.

## A. FALSITY OF REPRESENTATIONS

There can be no dispute that the installment contract in question did not provide for liability insurance coverage. The "full coverage" representation by Capitol's salesman, Mr.

Allen, was therefore patently false. In this connection it was not inappropriate for the jury to conclude that the parties to the transaction were all aware that "full coverage" was intended by Haley to include liability insurance since Thomas Haley testified that he told Capitol's salesman:

". . . I don't wanta be driving and suing somebody and getting my hind end sued off."

## B. SCIENTER

The statements heretofore alluded to as made by Capitol's salesman could have reasonably been found by the jury to have been made recklessly and without regard to their truth or falsity. Such unconcern for the truth may serve as an imputation of scienter. *Jordanich* v. *Gerstbauer*, 153 Ind. App. 416, 287 N.E.2d 784. When coupled with a finding by the jury that Haley was not unreasonable in his reliance upon such statements, this imputation serves to underpin a proper verdict against Capitol for fraud.

## C. RELIANCE

Capitol's most plausible argument concerns the matter of reliance by Haley upon the representations made by Allen, and we are inclined to agree that it perhaps harbors a measure of naivete to conclude, without reservation or hesitance, that a literate adult who insists upon the inclusion of a particular subject in a purchase contract would bind himself to that contract without availing himself of the opportunity to read the document in order to satisfy himself that the desired subject was within the contract terms. See *Miller* v. *Powers* (1889), 119 Ind. 79 at 87, 21 N.E. 455. Nevertheless, the question whether Thomas Haley reasonably relied upon Allen's assurances, which were in conflict with the limited insurance coverage specifically recited in the contract, was for the jury's determination. We are not at liberty to substitute our assessment of the evidence. It is but to repeat a truism that the question of reliance is one

of fact to be determined by the jury, and that upon appeal from a jury verdict this court will not weigh the evidence. *Smart & Perry Ford Sales, Inc.* v. *Weaver* (1971), 149 Ind. App. 693, 274 N.E.2d 718. Inherent in this statement is the sound reasoning, equally applicable in this state both to civil and criminal proceedings, found in *Deal* v. *State* (1895), 140 Ind. 354, 358, 39 N. E. 930:

> "The reason most frequently given in the decisions of this court for the rule that this court can not weigh the evidence, and therefore can not reverse for the reason that the preponderance of the evidence seems to be against the finding or verdict, is that the opportunities and means of the court and jury trying the case are so vastly superior to those of this court, they being able to see the witnesses face to face, to observe their conduct, appearance and demeanor on the witness stand, and thus judging of their intelligence, fairness and candor and many other means of weighing evidence that this court can not have, that it is deemed safer to leave that duty to be performed exclusively by them . . ."

While we might have concluded upon the facts of this case that Haley was not justified in relying upon Allen's representations and that Haley should have carefully read the contract, we nevertheless cannot say that such conclusion is required as a matter of law. A jury of reasonable minds might find as they did that Haley was entitled to rely upon Allen's representations even in the face of the particular contract language and even in view of its positioning upon the contract form and the fact that it was set out in red letters. The jury might have concluded, as was their fact finding prerogative, that Haley was lulled into not reading the insurance provisions of the contract by the prior affirmative representations made by defendant Capitol's salesman.

## D. INJURY OR DAMAGE TO HALEY BY CONDUCT OF CAPITOL DODGE

Capitol concedes that Thomas Haley was damaged but argues that such damage was occasioned by the repossession

of the auto by Chrysler Credit Corp. and that the repossession resulted from the cancellation of the physical damage insurance coverage. The record however does not require agreement with appellant upon this point. To the contrary, the record would and does support a conclusion that because of defendant's representations Haley reasonably anticipated that the installment contract price for the auto included premium payments for liability insurance as well as for physical damage coverage and that he could not financially meet his contract installment obligations *and* pay for liability insurance.

With respect, therefore, to the appeal by Capitol Dodge against the verdict and judgment awarded Thomas Haley, we affirm.

## 2. THE CHRYSLER CREDIT CORPORATION CASE

The Haley's appeal from the judgment entered against all three of them in favor of Chrysler Credit Corporation for the amount of the deficiency balance due upon the automobile is before us without benefit of an appellee's brief. Quite clearly in such situation, the appellants need only make a prima facie showing of reversible error in order to obtain reversal of the trial court's decision. *Speedway Board of Zoning Appeals* v. *Standard Concrete Materials Inc.* (1971), 150 Ind. App. 363, 276 N.E. 2d 589; *DuFour* v. *DuFour* (1971), 149 Ind. App. 404, 273 N.E.2d 102.

The Haleys argue that the verdict in favor of Chrysler Credit is clearly erroneous in light of the obvious fact that the same jury found fraud on the part of Capitol Dodge. It is appellants' position in this regard that the misrepresentation of Allen and Capitol Dodge found as a fact by the jury precludes recovery by Chrysler Credit upon the installment contract. They claim that their position is supported by Instruction No. 7 given by the trial court to the jury as follows:

"You are instructed that a holder in due course does not take an instrument free from a defense of misrepresentation when such misrepresentation has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms."

There is no inconsistency in the verdicts in the two cases. By bringing the action to recover damages for the fraudulent misrepresentation of the insurance coverage afforded by the contract, the defendant-appellant Haley affirmed the contract and is bound by it. *Prudential Insurance Co.* v. *Smith* (1952), 231 Ind. 403, 411, 108 N.E. 2d 61.

The jury quite properly held that the purchaser, Haley, had already been compensated (by their prior verdict) for the fraud which had induced him to enter into the installment sales contract. The Haleys cannot have it both ways. There was nothing unfair in the jury's holding Haley to his election.

The judgment below in favor of Chrysler Credit Corporation against the Haleys is also affirmed.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 288 N.E.2d 766.