**F. D. BORKHOLDER COMPANY, INC.,**
**Appellant (Defendant below),**

v.

**Melvin SANDOCK, Betty Sandock, Sam Sandock, Ruby Sandock and B. & S. Sandock, Inc., Appellees (Plaintiffs below).**

No. 1280S450.

Supreme Court of Indiana.

Dec. 12, 1980.

Sam Mirkin, South Bend, for appellant.

Myron J. Hack, Myron J. Hack & Associates, South Bend, for appellees.

HUNTER, Justice.

This case is before this Court upon the petition to transfer of plaintiffs–appellees B. & S. Sandock, Inc., et al. The trial court awarded the plaintiffs compensatory and punitive damages arising out of a breach of contract by the defendant–appellant F. D. Borkholder Company, Inc. The Court of Appeals, Third District, affirmed the award of compensatory damages but reversed the punitive damages award in an opinion authored by Judge Staton. *Sandock v. F. D. Borkholder Co.*, (1979) Ind.App., 396 N.E.2d 955. Judge Garrard dissented from the majority's treatment of the punitive damages issue.

Transfer is now granted, and the decision and opinion of the Court of Appeals are hereby vacated. The relevant facts were summarized by Judge Staton as follows:

"B. & S. Sandock, Inc. (Sandock) and F. D. Borkholder Company, Inc. (Borkholder), entered into a contract for the construction by Borkholder of a concrete block addition to Sandock's pre–existing structure. The addition was to be used as a retail showroom and warehouse in furtherance of Sandock's furniture and carpet business. Sandock was unable to use the addition for its intended use, however, because of a recurring moisture problem on the inside of one of the walls. Sandock filed suit seeking both compensatory and punitive damages. After trial by the court, Sandock was awarded compensatory damages in the amount of $8,711.69 and punitive damages in the amount of $6,500.00."

On appeal, Borkholder contended that:

1. The judgment was not supported by sufficient evidence;

2. The trial court erred in not granting Borkholder's motion for an involuntary dismissal; and

3. The trial court erred in awarding punitive damages.

We adopt the opinion of the Court of Appeals which affirms the trial court on the first two issues, as follows:

"I.

"Sufficiency of the Evidence

■ "Borkholder's argument with respect to the sufficiency of the evidence is twofold. First, Borkholder argues that because Sandock has been able to use certain areas of the addition for storage, Sandock was not damaged at all. This argument is without merit. Because of the unsightliness of one of the walls, Sandock was not able to use the addition as a showroom. Because of the dampness, Sandock was only able to use part of the addition for storage. Additionally, the useful life of the addition was less than it would have been had the construction proceeded pursuant to the plans and specifications embodied in the contract. Sandock proved that it had been damaged.

■ "Borkholder's second attack on the sufficiency of the evidence concerns testimonial conflicts as to the cause of the moisture problem. Several witnesses testified that the moisture problem was not attributable to Borkholder's work, while others testified that it was. Borkholder maintains that because of that conflict, the judgment was not supported by sufficient evidence. In propounding this argument, Borkholder has misconstrued the trial court's function as the finder of facts and our function as a court of appellate review. The case was heard below without the intervention of a jury. Accordingly, it was the function of the trial court to weigh the evidence and assess credibility in an effort to resolve the factual disputes. When, as here, the sufficiency of the evidence is raised as an issue on appeal, our function is to determine if there is substantial evidence of probative value to support the judgment based on an

examination of the evidence most favorable to the party that prevailed below together with the reasonable inferences that can be drawn therefrom. *Peters v. Davidson, Inc.*, (1977), Ind.App., 359 N.E.2d 556. Such an examination in the instant case discloses that the judgment is supported by sufficient evidence.

"II.

"Involuntary Dismissal

■ "At the close of Sandock's case–in–chief, Borkholder moved for an involuntary dismissal. Involuntary dismissals are provided for in TR. 41(B), which reads in pertinent part as follows:

" 'After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that considering all the evidence and reasonable inferences therefrom in favor of the party to whom the motion is directed, to be true, there is no substantial evidence of probative value to sustain the material allegations of the party against whom the motion is directed. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence . . . .'

"Borkholder contends that there was no substantial evidence of probative value concerning the amount of the damages that were incurred by Sandock and that the trial court therefore erred in not granting the motion.[2] [Footnote 1 is omitted.]

---

**2.** "Borkholder presented evidence after making the motion. Generally, the subsequent presentation of evidence constitutes a waiver of any error in the denial of such a motion. *City of Indianapolis v. Nickel* (1975), 165 Ind.App. 250, 331 N.E.2d 760. And, generally, a conclusion by this Court that the evidence was sufficient to support the judgment would eliminate the need for a discussion of the propriety of the denial of a motion for an involuntary dismissal.

*Winston v. State* (1975), 165 Ind.App. 369, 332 N.E.2d 229.

"Here, however, the trial commenced on September 6, 1977. After two days of testimony the trial was recessed for five months. The trial resumed on February 14, 1978. Sandock concluded its case–in–chief the next day, at which time Borkholder made its motion. The trial judge indicated that because of the five month recess he would have to review the first

"Sandock offered testimony from which the trial court could reasonably have concluded that the addition was not suitable for the purposes contemplated by the contract. Sandock offered further testimony that the amount required to remedy the defects would be slightly in excess of $17,000. There was, therefore, sufficient evidence to overcome Borkholder's motion for an involuntary dismissal."

■■■ The Court of Appeals also determined that Borkholder's contention that the judgment was contrary to law was waived for failing to comply with Ind.R.Ap.P. 8.3(A)(7) and denied Sandock's request for an assessment of damages against Borkholder pursuant to Ind.R.Ap.P. 15(G) for bringing a frivolous appeal. We concur in those dispositions.

### III.

### Punitive Damages

The Court of Appeals cited our decision in *Hibschman Pontiac, Inc. v. Batchelor,* (1977) 266 Ind. 310, 362 N.E.2d 845, for the proposition that punitive damages are recoverable in breach of contract actions only when a separate tort accompanies the breach or tort–like conduct mingles in the breach. Here, prior to the execution of the contract, Sandock representatives expressed their concern about moisture on the walls. Under the terms of the contract, they were to pay $200 for plans to be drawn up by Borkholder's architect. The contract provided that all labor and material would be furnished in accordance with specifications. Sandock was given a copy of the plans.

However, contrary to these plans, the top and bottom courses of block forming the one wall were not filled with concrete, thus constituting latent variances. Furthermore, the roofline was shortened which represented an additional deviation from the plans.

There was testimony that the cut–off roofline enabled water to leak down into the top of the block wall. Other evidence indicated that the wetness problem resulted from this water percolating down through the inside of the wall, collecting at the bottom, and then rising again by capillary action. Sandock made numerous complaints but was constantly reassured by several Borkholder representatives that the problem was caused by simple condensation, a theory ultimately disproved by an on–site test conducted by the Borkholder firm. Sam Sandock testified that Freeman Borkholder, president of the company, promised that the situation would be remedied whereupon Sandock tendered all but $1,000 of the contract price. The problem was never corrected. The Borkholder people knew, of course, that the blocks in the wall were not filled with concrete. Also, Borkholder himself conceded that the roofline adjustment increased the likelihood of water running down into the core of the wall.

■ We believe that there is cogent and convincing proof that the Borkholder firm engaged in intentional wrongful acts constituting fraud, misrepresentation, deceit, and gross negligence in its dealings with Sandock. *Hibschman Pontiac, Inc., supra.* Ac-

---

two days' testimony before he could rule on the motion. Because of the congestion of the court calendar and because of the delay that would result if the trial was recessed so that the judge could review the earlier testimony, the judge asked Borkholder if it would present its evidence with the understanding that he would reserve ruling on the motion until he had an opportunity to review the prior testimony. Borkholder consented and then presented its case–in–chief. The motion was implicitly denied when judgment was entered for Sandock. Under these circumstances we do not believe that Borkholder's decision to proceed constituted a waiver of any error in the denial of the

motion. Nor is our conclusion in Section 1, *supra*, that the judgment was supported by sufficient evidence dispositive of this issue. In *reviewing the sufficiency of the evidence,* we were able to examine all of the evidence most favorable to Sandock, including that evidence elicited during Borkholder's case–in–chief and during rebuttal. Our review of the denial of the motion for involuntary dismissal, however, is limited to an examination of the evidence most favorable to Sandock which was presented prior to the filing of the motion.
"Hence, we will proceed to discuss the denial of Borkholder's motion for an involuntary dismissal.

cordingly, we agree with the Court of Appeals that the trial court could have concluded that separate torts accompanied the breach. Next, relying on *Hibschman*, the Court of Appeals attempted to identify the public interest to be served by imposing punitive damages. However, the majority could not perceive any such interest and refused to let the award stand. We disagree. As Judge Garrard stated in his dissent:

"I have no problem identifying the public interest to be served in requiring that the builders of public buildings be deterred from fraudulently disregarding building code requirements or those contained in the plans and specifications they have agreed to comply with." *Sandock v. Borkholder, supra*, at 959.

■ The purpose of punitive damages generally is to punish the wrongdoer and to deter him and others from engaging in similar conduct in the future. *Indiana & Michigan Electric Co. v. Stevenson*, (1977) Ind. App., 363 N.E.2d 1254; *Jos. Schlitz Brewing Co. v. Central Beverage Co.*, (1977) Ind. App., 359 N.E.2d 566. An award of such damages is particularly appropriate in proper cases involving consumer fraud. *Jones v. Abriani*, (1976) 169 Ind.App. 556, 350 N.E.2d 635; *Capitol Dodge, Inc. v. Haley*, (1972) 154 Ind.App. 1, 288 N.E.2d 766.

■ The building contractor occupies a position of trust with members of the public for whom he agrees to do the desired construction. Few people are knowledgeable about this industry, and most are not aware of the techniques that must be employed to produce a sound structure. Necessarily, they rely on the expertise of the builder. Here, the builder has been found to have engaged in fraudulent or deceptive practices by constructing a building with latent deviations from the plans which resulted in damage to the owner. Further, the builder has attempted to disclaim responsibility for such damage when it may be inferred that it knew or should have known that its work was the cause. Under these circumstances, certainly the imposition of punitive damages furthers the public interest.

We find no reversible error in the judgment of the trial court and the judgment should be affirmed.

Judgment affirmed.

GIVAN, C. J., and PIVARNIK, J., concur.

DeBRULER, J., dissents with opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, dissenting.

The elements of a claim for fraud include false representation of a present or past fact by defendant, knowledge of falsity in the defendant, action in reliance thereupon by plaintiff, and injury resulting to plaintiff from such misrepresentation. *Automobile Underwriters v. Rich*, (1944) 222 Ind. 384, 53 N.E.2d 775. A false representation of fact may take the form of an opinion depending upon the surrounding circumstances. *Rochester Bridge Co. v. McNeill*, (1919) 188 Ind. 432, 122 N.E. 662. The evidence most favorable to the finding of fraud in this case is that there were several deviations between the plans and specifications for the building and the actual building as erected. These deviations were discovered by the plaintiff before the contract price was paid. Defendant was confronted with the deviations and stated that he would correct them. Upon the representation plaintiff paid the major portion of the contract price reserving a minor portion as security for corrections. The corrections were not made. This evidence establishes no more than one, perhaps two, breaches of contract by defendant. There is nothing beyond the breaches upon which to predicate a finding of fraud.

There is no false representation of fact by defendant, with scienter, resulting in injurious action in reliance. The damages awarded plaintiff on the count for breach of contract were complete. That award made plaintiff whole. It healed all wounds to plaintiff resulting as the natural consequences of the defendant's breach of contract. That award fulfilled plaintiff's expectancies legitimately arising from the contract it made, to the extent that the

recovery of money in the aftermath of a breach can do so.

I likewise dissent on the basis of the opinion of Justice Prentice in *Vernon Fire & Casualty Insurance Co. v. Sharp*, (1976) 264 Ind. 599, 349 N.E.2d 173, in which I concurred. The law should treat torts occurring in the season of a breach of contract as separate wrongs. Furthermore, I continue to be troubled with the absence of an express limitation of the extent of punitive damages. *Hibschman Pontiac, Inc. v. Batchelor*, (1977) 266 Ind. 310, 362 N.E.2d 845 (Concurring Opinion). They should be no more than is necessary to deter unwanted behavior. In this regard it may be noted that the Legislature has made the judgment that the crime of theft in its class D felony manifestation should carry a penalty of two (2) years imprisonment and a fine of not more than $10,000.

PRENTICE, J., concurs.