KITCHEN JEWELS, INC., Defendant-Appellant,

v.

Arnold BECK, Rose Beck, d/b/a B & S Rentals, Plaintiffs-Appellees.

No. 63A01–8704–CV–00081.

Court of Appeals of Indiana, First District.

Oct. 14, 1987.

Joseph L. Verkamp, Jasper, for defendant-appellant.

Roger S. Curry, Schneider, Lett, Shaneyfelt & Curry, Jasper, for plaintiffs-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Kitchen Jewels, Inc. appeals from the Pike Circuit Court a jury verdict in favor of B and S rentals for breach of a lease agreement. We affirm.

## FACTS

On March 1, 1985, Kitchen Jewels, Inc. (Kitchen) entered into a lease agreement with B and S Rentals (B and S). On the date of the lease B and S was a partnership owned by Arnold and Alan Beck. On the date of trial B and S was owned by Arnold and Rose Beck. The lease provided that Kitchen would lease from B and S a tract of real estate and a building that B and S would construct. The lease did not provide for the specific type of building to be erected. However, Kitchen approved B and S's construction of a twelve thousand (12,000) square foot building which also had a partial basement. Kitchen agreed to lease the building, but not the basement.

B and S substantially completed the building by August 1, 1985. On that date B and S met with and advised Kitchen that Kitchen could move into the building and stated that rent would start on September 1, 1985. Kitchen was reluctant to move into the building. On approximately August 19th of 1985, another meeting took place. Kitchen voiced concern over specific problems with the building and stated that Kitchen would not occupy the building until these problems were corrected. B and S complied with Kitchen's requests. However, Kitchen again refused to occupy the building. Kitchen apparently refused occupancy because of a separate dispute Kitchen had with Hurricane Construction, a company owned by Alan Beck, Arnold Beck's son. Kitchen gave no other reason for their refusal. On September 16, 1985, Kitchen's attorney sent a letter to B and S which indicated that Kitchen deemed the lease null and void for failure of consideration.

On November 19, 1985, B and S filed suit against Kitchen and against Virgil Gress, Kenneth C. Mehringer and Joseph Fehriback personally and as representatives. On November 11, 1986, a jury returned a verdict in favor of B and S against only Kitchen. The trial court entered judgment in favor of B and S for Thirty-Six Thousand Six Hundred and Eighty-Four Dollars ($36,-684). Kitchen appeals this judgment.

## ISSUES

While Kitchen raises four (4) issues for review, we renumber and rephrase the issues as follows:

1. Whether the trial court erred by entering judgment in favor of B and S based upon the jury's verdict.

2. Whether the trial court erred by admitting photographic evidence of a building presently occupied by Kitchen.[1]

## DISCUSSION AND DECISION

*Issue One*

Kitchen first argues that the trial court erred by entering judgment in favor of B and S. Kitchen contends that the judg-

---

1. The parties also raised appellate procedural errors. However, resolution of these issues are unnecessary for determination of this appeal.

ment is contrary to law and unsupported by the evidence, because B and S failed to comply with the mandates of the contract. Kitchen correctly acknowledges the court's well established standard of review. On appeal the court neither reweighs evidence nor judges witness credibility. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 904; *F.D. Borkholder Co. v. Sandock* (1980), 274 Ind. 612, 614, 413 N.E.2d 567, 569; *Burras v. Canal Construction and Design Co.* (1984), Ind.App., 470 N.E.2d 1362, 1365. The court considers only that evidence which supports the judgment. *Martin*, at 904; *Sandock*, 274 Ind. at 614, 413 N.E.2d at 569; *Burras*, at 1365. The judgment will be affirmed if substantial evidence of probative value exists to support the judgment. *Martin*, at 904; *Sandock*, 413 N.E.2d at 569; *Burras*, at 1365.

In the present case, substantial evidence of probative value exists to support the jury's verdict and court's judgment. The evidence shows that Kitchen entered into a lease agreement with B and S to rent a tract of land and building. The evidence also shows that although a specific date of occupancy was not established, the agreement clearly contemplated that occupancy would begin around June 1, 1985, or as soon as possible thereafter. However, because of rain and other circumstances the building was not completed substantially and occupancy was not possible until August 1, 1985. B and S notified Kitchen that Kitchen could occupy the building starting on August 1, 1985. In accordance with the lease agreement, the rent payments became due on the first of the month beginning on September 1, 1985. In addition, B and S advised Kitchen that if any other changes were required, B and S would comply with Kitchen's requests. Kitchen, however, refused to honor the contract by not occupying the building or paying rent. Based upon this evidence the jury could have determined that B and S fulfilled its contract requirements by substantially completing the building and by delivering possession to Kitchen within a reasonable time after June 1, 1985. Furthermore, the jury could have determined that Kitchen breached the contract by refusing to occu-

py and pay rent. Therefore, the trial court did not err by entering judgment in favor of B and S.

Kitchen argues that B and S did not fulfill the contract obligations and that a jury's verdict so holding was contrary to law. Specifically, Kitchen suggests that the jury could not have found that B and S substantially fulfilled all the provisions of the contract. Kitchen is mistaken, and the arguments forwarded merely request that the court reweigh the evidence. This the court cannot do.

Kitchen first suggests that the jury could not have found that B and S complied with the time mandates of the contract. Kitchen relies upon section 1.44 of the lease agreement which provides that, "Time is of the essence of this agreement." Record at 58. Pursuant to this section Kitchen argues that since construction of the building was not substantially completed and occupancy was not possible on June 1, 1985, the contract was void. Kitchen's argument fails.

Kitchen failed to point out several other provisions of the contract which clearly establish that the contract was not void. Section 1.02 of the contract provides as follows:

"Section 1.02. If Lessor shall be unable for any reason whatsoever to deliver possession of the leased premises on the commencement date of the term hereof, it shall not be liable to Lessee for any damages caused thereby, nor shall this lease thereby become void or voidable, nor shall the term hereof in any way be extended, but in such event Lessee shall not be liable for any rent until such time as Lessor can and does deliver possession."

Record at 46. This provision clearly contradicts Kitchen's interpretation of the contract. In addition, section 1.43 of the contract provides that:

"Section 1.43. Neither Lessor nor Lessee shall be required to perform any term, condition, or covenant in this lease so long as such performance is delayed or prevented by any acts of God, strikes,

lockouts, material or labor restrictions by any governmental authority, civil riot, floods, and any other cause not reasonably within the control of the Lessor or Lessee and which by the exercise of due diligence Lessor or Lessee is unable, wholly or in part, to prevent or overcome."

Record at 58. The evidence established that construction of the building was delayed, in part, by inclement weather. Furthermore, section 1.30 of the contract provides that:

"Section 1.30. If lessor defaults in performance of any term, covenant, or condition required by it under this agreement, lessee may elect either one of the following: (a) after not less than 20 days notice to lessor, lessee may remedy such default by any necessary action, and in connection with such remedy may pay expenses and employ counsel ... or (b) elect to terminate this agreement on giving at least 60 days notice to lessor of such intention, thereby terminating this agreement on the date designated in such notice, unless lessor shall have cured such default prior to expiration of the 60 day period."

Record at 56. Kitchen did not tender notice of a breach to B and S until September 16, 1985. This letter was tendered more than a month after Kitchen could have occupied the premises and more than three (3) months past the originally contemplated date of occupancy. Furthermore, the letter did not indicate a breach of the contract, but stated that Kitchen deemed the lease null and void for lack of consideration. Therefore, the jury correctly rejected Kitchen's interpretation of the time provision of the contract, and correctly determined that B and S reasonably fulfilled the contract's time requirements.

Kitchen next argues the jury's verdict was contrary to law because B and S had failed to comply with a permit provision of the contract. The permit provision was added to the end of the contract, and states that: "This document is legal providing B and S Rentals can get all state and local permits, for proposed proj." Record at 58. Kitchen argues that this clause should be interpreted against B and S such that the terms "can get" are construed to mean "has obtained". Under this interpretation, Kitchen suggests that the contract is void, because B and S had not obtained the proper releases from the State Department of Fire Prevention and Building Safety, and because B and S had not obtained a septic permit. Again Kitchen's argument fails.

When interpreting the rights and duties of parties under a contract the court construes the provisions in accordance with the parties' agreed intent. *Michels v. Dyna-Kote Industries, Inc.* (1986), Ind. App., 497 N.E.2d 586, 589; *Keystone Square Shopping Center Co. v. Marsh Supermarkets, Inc.* (1984), Ind.App., 459 N.E. 2d 420, 422, *trans. denied.* Generally, the court will not look outside the body of the document in determining the parties' intent. *Michels,* at 589. Furthermore, unless ambiguous, the court will presume the document contains the parties' only intended agreement, and will interpret the terms of the provisions to encompass their plain meaning. *Michels,* at 589; *Torres v. Meyer Paving Co.* (1981), Ind.App., 423 N.E.2d 692, 697, *trans. denied.* In addition, the contract will not be construed against the drafter when the provisions are not ambiguous. *Anderson v. State Farm Mutual Automobile Insurance Co.* (1984), Ind. App., 471 N.E.2d 1170, 1172; *Shrum v. Dalton* (1982), Ind.App., 442 N.E.2d 366, 369. A contract is ambiguous only when reasonably intelligent people could honestly find its provisions susceptible of more than one interpretation. *Anderson,* at 1172.

In the present case, the rights and duties of the parties under the contract were properly determined. Although the contract does not contain the parties' agreement on the building to be constructed, the contract does contain the parties' complete agreement on all terms of the lease. Furthermore, the terms of the provisions in question are not ambiguous. The terms "can get" are not reasonably subject to more than one interpretation. "Can get" refers to the ability to obtain the permits and not final obtainment of the permits.

The evidence clearly indicated that B and S would be able to obtain the releases and permits, even though B and S may not have obtained all permits prior to the date Kitchen refused to take possession and to pay rent. Therefore, the jury properly could have found that B and S had fulfilled its permit obligations under the terms of the lease.

Kitchen's final argument suggests that the jury's verdict should be overturned because B and S failed to construct in accordance with the contract and clearly violated warranties that were part of or implied into the contract for the construction and leasing of the building. The evidence, when viewed most favorably to the judgment, shows that the building was properly constructed and was structurally sound. Therefore, the trial court properly entered judgment in favor of B and S based upon the jury's verdict.

*Issue Two*

 Kitchen next argues that the trial court improperly admitted photographic evidence, because the photographs were irrelevant.[2] The trial court may admit or reject marginally relevant evidence in its discretion, and will be overturned only for an abuse. *Maynard v. State* (1987), Ind., 513 N.E.2d 641, 646; *Data Processing Services, Inc. v. L.H. Smith Oil Corp.* (1986), Ind. App., 492 N.E.2d 314, 321; *Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. v. Strain* (1983), Ind.App., 446 N.E.2d 626, 629, *trans. denied.* Evidence is relevant, even though its ability to persuade is minimal, if the evidence tends to prove a material fact. *Rust v. Guinn* (1981), Ind. App., 429 N.E.2d 299, 305, *trans. denied.* The photographic evidence in the present case depicted cracks in the walls of a building Kitchen occupied after rejecting occupancy of the building constructed by B and S. In challenging Kitchen's relevancy objections at trial, B and S stated two reasons to support the photographs admission into evidence. First, B and S argued that the

photos were admissible to rebut Kitchen's asserted reason for refusing occupancy of the building under the lease. Second, the photos demonstrated the effects of the use of a telescoping lens with regard to the depiction of the cracks in the walls. The first reason asserted by B and S supports the admission of exhibits number 36 and number 37, and the second reason supports admission of exhibits number 45 and number 46. Kitchen's argument that B and S failed to establish a similarity between the buildings and cracks fails to establish that the trial court abused its discretion. The trial court acted properly in determining that similarity only goes to the weight to be given to the evidence. Therefore, the trial court did not abuse its discretion and the judgment is affirmed.

Affirmed.

GARRARD, P.J., and ROBERTSON, J., concur.

---

**2.** B and S pointed out that Kitchen arguably waived this issue by failing to cite to the record. *See e.g., SCM Corp. v. Lettener* (1983), Ind.App., 448 N.E.2d 686, 692, *trans. denied.* However, the court will address this issue on the merits.