**P.C. MANAGEMENT, INC.,**
**Plaintiff–Appellant,**

v.

**PAGE TWO, INC., Don't Ask Inc., David Page, Matthew Iaria, and John Doe, Original Defendants–Appellees.**

**P.C. MANAGEMENT, INC.,**
**Plaintiff–Appellant,**

v.

**CITY OF INDIANAPOLIS, Department of Metropolitan Development of the City of Indianapolis, and The Metropolitan Development Commission of Marion County, Additional Defendants–Appellees.**

No. 49A02–8909–CV–480.[1]

Court of Appeals of Indiana,
First District.

June 12, 1991.

Rehearing Denied July 18, 1991.

1. This case was reassigned to this office on        January 2, 1991.

Preston T. Breunig, John D. Schiff, Indianapolis, for plaintiff-appellant.

Stephen W. Terry, Alan L. McLaughlin, Baker & Daniels, Indianapolis, for original defendants-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

P.C. Management, Inc. appeals the trial court's grant of summary judgment for City of Indianapolis, Department of Metropolitan Development of the City of Indianapolis, and The Metropolitan Development Commission of Marion County (collectively, City) and denial of summary judgment for P.C. Management. We affirm.

## ISSUE

Whether the trial court erred in granting summary judgment for the City and in denying P.C. Management's motion for summary judgment against the City.

## FACTS [2]

In June 1984, LaScala Partnership (LaScala), owner of real estate located at 110 South Meridian Street in Indianapolis leased the building on the real estate to Theodore H. Polk (Polk) and Stephen A. Teets (Teets). This was the first master lease executed. Polk and Teets assigned their interest to P & T, Inc., which orally sublet the second floor to Charles and Patricia Perrin in September 1984. The Perrins then incorporated under the name P.C. Management, Inc. The sublease was reduced to writing in March 1985. P & T assigned its interest to Page Two, Inc. (Page Two), and Page Two thereby became sublessor to P.C. Management. LaScala and Page Two then executed two consecu-

tive substitute master leases for the building on or about March 6, 1986, and March 1, 1987. In addition, the sublease between Page Two and P.C. Management was amended on September 1, 1987. Page Two also had sublessees other than P.C. Management.

On July 26, 1988, the City purchased Page Two's leasehold interest and two of the subleases of Page Two's sublessees. On September 14, 1988, the City purchased from LaScala the fee simple interest in the building. Although the City also initially offered to purchase the sublease interest of P.C. Management and the parties consulted experts in order to value the interest, the City notified P.C. Management by letter of November 17, 1988, that P.C. Management's sublease had terminated or would soon terminate.

The City also asserted the master lease between the owner of the fee and Page Two had terminated by reason of merger when the City acquired the fee simple interest after acquiring Page Two's leasehold interest. In addition, the City stated it would order demolition of the building in the Spring of 1989 and this would cause the master lease to terminate. Finally, the City's letter stated the City's purchase of Page Two's lease under condemnation authority automatically resulted in the termination of the master lease. Later, on January 16, 1989, the City received an opinion from a consulting engineer which stated the building at 110 South Meridian was unsafe for use by the general public.

On December 20, 1988, P.C. Management filed a complaint against the City for declaratory judgment and injunctive relief. The complaint was made a complaint supplemental to the original action filed in 1986 by P.C. Management against Page Two and other parties who are not parties to this appeal. Both the City and P.C. Management filed motions for summary judgment. On June 9, 1989, the trial court awarded summary judgment to the City

---

**2.** This action was originally commenced by P.C. Management in 1986 when it filed a complaint against Page Two, Don't Ask, Inc., which was a subtenant of Page Two, and agents, officers, and owners of Page Two and Don't Ask, Inc. On

December 28, 1987, we affirmed the trial court's judgment that P.C. Management had a valid and existing sublease. *See Page Two, Inc. v. P.C. Management, Inc.* (1987), Ind.App., 517 N.E.2d 103.

and denied P.C. Management's motion, stating there was no genuine issue of material fact. The court found "that Citys [sic] acquistion [sic] of the fee by exercise of condemnation authority terminated the master lease. Plaintiff has no claim aganist [sic] condemnation process under their sub [sic] lease." Record at 424.

## DISCUSSION AND DECISION

P.C. Management contends the trial court's entry of summary judgment for the City was error for numerous reasons. The City argues no genuine issue of fact exists. P.C. Management appears to agree that no factual issue exists.[3] Thus, this appeal involves solely questions of law and we review the trial court's judgment to see if it accurately applied the law. We stand in the trial court's shoes and apply the same standard for summary judgment applicable in the trial court. *Ayres v. Indian Heights Volunteer Fire Department, Inc.* (1986), Ind., 493 N.E.2d 1229, 1234. We will affirm a summary judgment if it is sustainable on any theory or basis found in the record, *Willsey v. Peoples Federal Savings & Loan* (1988), Ind.App., 529 N.E.2d 1199, 1207, *trans. denied,* even if the trial court rendered judgment upon a theory different from the one upon which we sustain the judgment. *Howard v. H.J. Ricks Construction Co.* (1987), Ind.App., 509 N.E.2d 201, 204, *trans. denied.*

We first examine the theory under which the trial court apparently entered summary judgment for the City: that acquisition of the fee by exercise of condemnation authority terminated the master lease and P.C. Management had no claim under its sublease against the condemnation process.

The City contends and the record reflects that it used IND.CODE § 36–7–15.1–1 *et seq.,* dealing with redevelopment of blighted areas, to acquire the property under consideration. That chapter permits acquisition of real property through the exercise of eminent domain. When an Indiana city condemns land its condemning authority is given an option of proceeding under the General Eminent Domain Act, IND.CODE § 32–11–1–1 *et seq.* or under eminent domain proceedings for cities and towns, IND.CODE § 32–11–1.5–1 *et seq.* Under I.C. § 32–11–1–1(b), the body with the right to exercise the power of eminent domain must make an effort to purchase the real property interests before proceeding to condemn them. A deed executed in lieu of condemnation conveys only the interest stated in the deed. I.C. § 32–11–1–1(d). Under I.C. § 32–11–1.5–3 to 5, the works board of a municipality must adopt a resolution describing property to be affected, prepare a list of owners or holders of interests in the property, and award damages for each piece of property listed.

■ We are persuaded by out-of-state authority that a conveyance in lieu of actual condemnation of real property constitutes a condemnation proceeding because it indicates an intention to acquire the property by condemnation and is tantamount to a taking under the power of eminent domain. *See Western Airlines, Inc. v. Lathrop Company* (1972), Alaska, 499 P.2d 1013; *Vincent v. Redevelopment Authority of the County of Washington* (1985), 87 Pa. Commw. 470, 487 A.2d 1024. "If there is a taking by eminent domain of all of the leased property for all of the lease term, the lease is terminated." *Restatement (Second) of Property* § 8.1(1) (1977). The authorities cited by the City support this proposition. *See A.W. Duckett & Co. v. United States* (1924), 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216; *Pennsylvania Avenue Development Corporation v. One Parcel of Land* (D.C.Cir.1980), 494 F.Supp. 45; *Beaverton Urban Renewal Agency v. Koning* (1981), 53 Or.App. 842, 632 P.2d 1359. Thus, the master lease between the fee owner and Page Two terminated when the City acquired the fee simple title to the building on September 14, 1988.

■ As P.C. Management notes, the Supreme Court's opinion in *A.W. Duckett* stated that "an unqualified taking in fee by

---

**3.** P.C. Management does contend the sublease is ambiguous and cites authority for the proposition that interpretation of an ambiguous contract may involve factual questions. We discuss the question of contract ambiguity below.

eminent domain takes all interests". 266 U.S. at 151, 45 S.Ct. at 38, 69 L.Ed. at 218. P.C. Management argues the taking of the fee by the City was not unqualified here because the special warranty deed from the fee owner to the City stated the fee simple was subject to P.C. Management's existing, unrecorded sublease. However, the fee could have been subject to the sublease only to the extent of its worth. The sublease interest failed to exist when the master lease did and, therefore, was of no worth.

■ An alternative way of considering the situation, advanced by the City to the trial court and to this court, is that a merger of interests in the estate occurred on September 14, 1988. " '[W]here a greater estate and a less coincide and meet in one and the same person, in one and the same right, without any intermediate estate' ", the lesser estate is merged in the greater. *Abernathy v. McCoy* (1930), 91 Ind.App. 574, 583, 154 N.E. 682, 685, *trans. denied* (quoting 5 Words and Phrases 4492).

On July 26, 1988, Page Two sold and assigned to City all of Page Two's rights as lessee under the master lease and as sublessor under the sublease with P.C. Management. As the sublease with P.C. Management still existed, City took less than all of the leased property. When the City acquired the fee interest from LaScala on September 14, 1988, the leasehold interest merged into the fee interest. Despite the merger, P.C. Management's sublease interest still would have existed separately had a contractual provision providing otherwise not existed.

Upon purchasing Page Two's leasehold interest, the City became P.C. Management's sublessor and acquired the rights and obligations of sublessor under the sublease which had existed between Page Two and P.C. Management. Language in paragraph 4 of the sublease provided:

"[T]his sublease shall terminate in any event upon the termination of the Master Lease for any cause whatsoever. Sublessee shall have a right to renew this sublease . . . if the Master Lease remains in full force and effect."

Record at 63.

■ P.C. Management argues the words "for any cause whatsoever" are ambiguous because P.C. Management interprets them to mean "for material breach or default", whereas the City and the trial court apparently interpreted them to mean "for any reason whatsoever". "A contract is ambiguous only when reasonably intelligent people could honestly find its provisions susceptible of more than one interpretation." *Kitchen Jewels, Inc. v. Beck* (1987), Ind. App., 513 N.E.2d 1246, 1249. We are not persuaded by the out-of-state cases cited by P.C. Management or by P.C. Management's arguments that the words are ambiguous.

■ Language in a contract is generally given its plain and ordinary meaning, which is that meaning given to the language by the community and an ordinary reader. *Romain v. A. Howard Wholesale Co.* (1987), Ind.App., 506 N.E.2d 1124, 1126, *trans. denied. The American Heritage Dictionary of the English Language* 214 (1981) defines "cause" as "2. A basis for an action or decision; ground; reason; motive. 3. Good or sufficient reason or ground." In the language under consideration, the word "whatsoever" modifies "cause" to the extent that a reasonably intelligent person would find the word susceptible to dictionary meaning "2" rather than "3" and would find the word unambiguous. Thus, "for any cause whatsoever" as used in paragraph 4 of the sublease does not mean "for material breach or default". The broad term means "for any reason".

P.C. Management argues the trial court's determination, in Finding of Fact 16 of the judgment regarding the 1986 action by P.C. Management against Page Two and the other original defendants, that the term of the sublease would expire if the master lease was terminated by the fee owner for cause and that the defendants had not shown the master lease had terminated for cause, makes that interpretation of the sublease language the law of the case. Because a completely different set of defendants was involved in the prior action, we

find no merit to this argument. *See Oviatt v. Behme* (1958), 238 Ind. 69, 147 N.E.2d 897 (the parties to a judgment are bound by a judgment from which no appeal is taken, and even if the judgment is erroneous it becomes the law of the case). Furthermore, we did not address the contents of that finding in our prior opinion. *See Page Two*, 517 N.E.2d at 108, n. 6.

■ Where contract terms are unambiguous, we will apply them according to their plain meaning. *Reeder v. Ramsey* (1984), Ind.App., 458 N.E.2d 682, 685. The plain meaning of Paragraph 4 is that the sublease would terminate if the master lease terminated for any reason. Therefore, upon the termination of the master lease at the time of the City's purchase of the master lease in lieu of condemnation, the sublease also terminated.

■ The fundamental purpose of the eminent domain act, I.C. § 32–11–1–1 *et seq.* is to ensure holders of interest in property receive just compensation for property taken for public use, *Unger v. Indiana Michigan Electric Company* (1981), Ind.App., 420 N.E.2d 1250, 1257, and we believe the purpose of the statutory procedures for cities and towns in I.C. § 32–11–1.5–1 *et seq.* to be the same. Nevertheless, the award provisions of the act do not apply to the facts of this case. Under the express terms of the sublease, the sublease terminated and P.C. Management's rights and property interest in the sublease ended at the moment the master lease terminated. Therefore, P.C. Management had no property interest which was taken by the City.

■ We agree with P.C. Management that all interests to a single tract of real property should be joined in a condemnation action, *State v. Montgomery Circuit Court* (1959), 239 Ind. 337, 157 N.E.2d 577, and that "a tenant is entitled to compensation for an unexpired term of lease terminated by a condemnation action[ ]", *J.J. Newberry Co. v. City of East Chicago* (1982), Ind.App., 441 N.E.2d 39, 41, *trans. denied.* However, under the circumstances of this case the City had no obligation to purchase P.C. Management's sub-

lease interest. P.C. Management's interest had terminated already by operation of law, so that P.C. Management had no interest to sell. The fact that the City offered to negotiate with P.C. Management and pay for a sublease interest when it had no obligation to do so is irrelevant. The subleases of the other sublessees may not have contained the same provisions as the sublease between P.C. Management and Page Two. Also, the City's offers to P.C. Management and the other sublessees may have been for the purpose of good public relations despite a lack of obligation on the City's part.

The trial court properly applied the law to the undisputed facts. Therefore, we affirm the trial court's entry of summary judgment for the City and the trial court's denial of summary judgment to P.C. Management. Because of our affirmance under this theory, we need not consider the additional theories offered by the City to support the trial court's entry of summary judgment.

Affirmed.

SHIELDS, J., concurs with separate opinion in which SULLIVAN, J., joins.

SULLIVAN, J., concurs in result reached in RATLIFF, J., lead opinion.

SHIELDS, Judge, concurring.

I agree the City's acquisition of the fee interest of LaScala effected a merger of the fee with City's leasehold interest previously acquired from Page Two. I also agree the merger of those two interests terminated the leasehold and the Master Lease. Finally, I agree the phrase "for any cause whatsoever" means "for any reason".

Ordinarily, termination of the lease means the lease itself terminates; it does not necessarily leave the sublessee without a remedy for the premature termination of the lease. Hence, the termination of Page Two's leasehold interest would not have terminated the interest of the sublessee, P.C. Management, but for the provisions of the sublease to which P.C. Management agreed. In particular, P.C. Management

agreed to the terms of paragraph four of the subject sublease which specifically provides the sublease shall terminate if the Master Lease terminates. Thus, P.C. Management consented to the extinguishment of its rights when the Master Lease terminated through merger.

I want to emphasize the fact that when the City acquired the interests of other sublessees the City had ·not acquired the fee simple interest of LaScala. Therefore, at that time, merger had not occurred and the separate interests of the several sublessees were viable.