## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 17 2020, 9:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Abshire
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Samuel Gebrehiwet,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

March 17, 2020

Court of Appeals Case No.
19A-CR-2045

Appeal from the Marion Superior Court

The Honorable Matthew Kubacki, Judge Pro Tem

Trial Court Cause No.
49G08-1902-CM-5214

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Samuel Gebrehiwet was found guilty of battery resulting in bodily injury as a Class A misdemeanor and public intoxication, a Class B misdemeanor. He was sentenced to concurrent sentences of 365 days for the battery conviction, with 359 days suspended to probation; and sixty days for the public intoxication conviction, with fifty-four days suspended to probation. Gebrehiwet appeals, raising one issue for the court's review which we restate as whether the trial court should have granted his Indiana Trial Rule 41(B) motion for involuntary dismissal of the public intoxication charge. Concluding that the trial court did not err in denying Gebrehiwet's motion, we affirm.

# Facts and Procedural History

[2] Paul Carroll worked as a barback and a bouncer at a drinking establishment ("Pub") located in downtown Indianapolis. His duties included stocking the bar area and, when necessary, escorting troublesome, intoxicated, and unruly patrons from the Pub.

[3] On February 9, 2019, at around 10:50 p.m., Paul was working in the back room of the Pub when he noticed Gebrehiwet bothering a dancing couple by dancing behind the woman. Whenever her partner moved her away from Gebrehiwet, Gebrehiwet would follow the woman and resume dancing behind her. Paul and his manager noticed that the woman's partner was becoming frustrated,

and the manager told Paul that "it's time for [Gebrehiwet] to go." Bench Trial & Sentencing, Volume II at 9. Paul noticed that Gebrehiwet seemed intoxicated. He approached Gebrehiwet and asked him to leave the Pub. Gebrehiwet was not happy about leaving the Pub, but he agreed to leave, did not argue with Paul, and showed no signs of aggression.

[4] Paul escorted Gebrehiwet to a side door. Paul testified that the Pub uses this door to remove patrons because once the door closes, it automatically locks— preventing reentry. He also testified that bouncers are taught never to have their back to a patron, as a safety precaution. When Paul and Gebrehiwet reached the side door, Paul told Gebrehiwet to open the door. Gebrehiwet asked Paul to open the door, but Paul refused and told Gebrehiwet to open it.

[5] Gebrehiwet opened the door as Paul stood behind him. Paul intended to close the door after Gebrehiwet; however, Gebrehiwet stopped in the doorway, pivoted, and tried to close the door on Paul while simultaneously throwing a beer bottle at him. Paul put his foot in the path of the door so Gebrehiwet could not close it. Paul ducked, but the bottle hit him in the temple causing him pain. Paul then pushed Gebrehiwet out of the doorway and onto the sidewalk. Paul testified that he pushed Gebrehiwet because "he was showing signs of aggression. He had already hit me. So, I didn't know what else he was going to do. I was defending myself and I just got him out of the way." *Id.* at 12.

[6]     A police officer who had been eating inside the Pub walked to the door and told Paul to leave Gebrehiwet alone. Paul then "walked to the other side of the building to calm down because [he] was a little bit upset." *Id.* at 13.

[7]     The Indianapolis Metropolitan Police Department dispatched Officer Kari Pennington to a fight reported at the Pub. She was told the suspect was leaving the Pub. Officer Pennington, already close to the Pub, spotted the suspect (Gebrehiwet) as she received the dispatch. She watched Gebrehiwet walk from the Pub and across four lanes of traffic, heading towards the far sidewalk and staggering as he walked. She stopped him on the other side of a railroad trestle.

[8]     Officer Pennington had received training and was experienced in identifying intoxicated individuals. She determined that Gebrehiwet was intoxicated because she noticed that he swayed as he stood and staggered as he walked. She smelled the odor of alcohol on his breath and body, and she testified that he had a "hundred-yard stare"— as if he was "almost looking through [her]." *Id.* at 20-21.

[9]     On February 10, 2019, the State charged Gebrehiwet with battery resulting in bodily injury, a Class A misdemeanor. He also was initially charged with public intoxication, as a Class B misdemeanor, alleging that while he was in a state of intoxication, he had endangered a person's life. On July 15, 2019, the State amended the public intoxication count to allege that while Gebrehiwet was in a state of intoxication, he harassed, annoyed, or alarmed the bouncer.

[10] On August 1, 2019, a bench trial was held. After the State presented its case, Gebrehiwet moved for involuntary dismissal of the public intoxication count, pursuant to Indiana Trial Rule 41(B). The trial court denied the motion, finding that the State had met its burden to prove the elements of both counts—Class A misdemeanor battery and Class B misdemeanor public intoxication. The court then found Gebrehiwet guilty as charged. Regarding finding Gebrehiwet guilty of both public intoxication and battery resulting in bodily injury, the trial court explained:

> As it pertains to count two, I do find from the testimony that the defendant was in a place – a public place or a place of public resort that being the [Pub]. That was through the testimony of [Paul]. I do find that he was intoxicated based upon the testimony from [Paul] all be it [sic] he doesn't have formal certification. He was a bouncer and a [barback]. I previously when I was in college served as a bouncer and a [barback] and while I didn't have formal training, I could tell when someone was drunk just based on looking at them. Also, from the testimony of Officer Pennington who . . . has gone through extensive training and believed the defendant was intoxicated based on the indicators that she saw. That occurred as a use of alcohol. As it pertains to whether or not he was harassing or annoying or alarming Paul Carroll – I do take into consideration counsel's argument as to the duplicative use of the evidence to find him guilty in count one and attempting to use the same in count two as it pertains to him throwing the bottle and the argument that that bottle throwing was as to the harassing, annoying or alarming nature of Paul Carroll; however, based on [Paul]'s testimony alone – it went beyond just a little bit more to the throwing of the bottle just that this individual attempted to close the door. He was unaware if these things could go forward to the point where he had to push the defendant outside of the bar and stand over him to make sure that nothing went down.

> While if the State proceeded only on the grounds of the bottle being thrown causing pain, I would find that counsel – your argument would have merit, but because of those other things all be it [sic] somewhat miniscule – I do believe that it does rise to the level of harassing, annoying or alarming Paul Carroll as he was unsure how this situation could escalate and where it could go from there. I do find as it pertains to this particular count and there's no rope [sic] definition that is specific to Public Intoxication with harassing, annoying or alarming. . . . I do find the actions of the defendant to be that harassing, annoying or alarming and do find that there is separate evidence used to convict the defendant on count two separate from count one. I make that peculiarly [sic] for the record so if it does go to the Court of Appeals, they're aware of how the [c]ourt came to that decision and based upon the actions that happened after the bottle was thrown including the door being slammed, the fact that his attitude and demeanor switched from being compliant to non-compliant and [Paul] testified that he felt compelled to stand over the defendant until law enforcement came because he was unsure if this was going to escalate or what was going to happen. So, I do find [the] State met their burden as it pertains to counts one and two and find Mr. Gebrehiwet . . . guilty of counts one and two.

*Id.* at 29-31.

[11]     The trial court sentenced Gebrehiwet to 365 days, with 359 days suspended to probation for the battery conviction and sixty days, with fifty-four days suspended to probation for the public intoxication conviction – with the sentences to run concurrently. Gebrehiwet now appeals.

# Discussion and Decision

## Motion for Involuntary Dismissal

Gebrehiwet contends the State failed to present sufficient evidence to support his conviction of public intoxication, and therefore the trial court should have granted his Trial Rule 41(B) motion for involuntary dismissal of the public intoxication charge.

## A. Standard of Review

When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor reexamine witness credibility. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016). We consider only the evidence and reasonable inferences supporting the judgment. *Id.* Reversal is appropriate only when a reasonable person would not be able to form inferences as to each material element of the offense. *Naas v. State*, 993 N.E.2d 1151, 1152 (Ind. Ct. App. 2013).

Trial Rule 41(B) states, in pertinent part:

> *Involuntary dismissal: Effect thereof.* After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. . . .

Our review of the trial court's Trial Rule 41(B) decision is well-established:

> The grant or denial of a motion to dismiss made under Trial Rule 41(B) is reviewed under the clearly erroneous standard. *Taflinger Farm v. Uhl*, 815 N.E.2d 1015, 1017 (Ind. Ct. App. 2004). In reviewing a motion for involuntary dismissal, this court will not reweigh the evidence or judge the credibility of the witnesses. *Id.* We will reverse the trial court only if the evidence is not conflicting and points unerringly to a conclusion different from the one reached by the lower court. *Chemical Waste Mgmt. of Ind., L.L.C. v. City of New Haven*, 755 N.E.2d 624, 635 (Ind. Ct. App. 2001).

> *Thornton–Tomasetti Eng'rs v. Indianapolis–Marion County Pub. Library*, 851 N.E.2d 1269, 1277 (Ind. Ct. App. 2006). In a criminal action, "[t]he defendant's [Trial Rule 41(B)] motion is essentially a test of the sufficiency of the State's evidence." *Workman v. State*, 716 N.E.2d 445, 448 (Ind. 1999). Notably, our review of the denial of the motion for involuntary dismissal is limited to the State's evidence presented during its case-in-chief. *See Harco, Inc. v. Plainfield Interstate Family Dining Assocs.,* 758 N.E.2d 931, 938 (Ind. Ct. App. 2001); *see also Stephenson v. Frazier*, 425 N.E.2d 73, 74 (Ind. 1981) ("'Our review of the denial of the motion for involuntary dismissal . . . is limited to an examination of the evidence most favorable to [the State] which was presented prior to the filing of the motion.'") (quoting *F.D. Borkholder Co. v. Sandock*, 274 Ind. 612, 413 N.E.2d 567, 570 n.2 (1980)), *superceded on other grounds*, Ind. Trial Rule 41(B) (as amended Nov. 4, 1981).

*Williams v. State*, 892 N.E.2d 666, 670-71 (Ind. Ct. App. 2008) (alterations in original), *trans. denied.*

## B. Sufficiency of the Evidence – Public Intoxication

[16]   Gebrehiwet was convicted of public intoxication, a Class B misdemeanor, which, in relevant part, is defined as follows:

> [I]t is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol . . . if the person:
>
> > (1) endangers the person's life;
>
> > (2) endangers the life of another person;
>
> > (3) breaches the peace or is in imminent danger of breaching the peace; or
>
> > (4) harasses, annoys, or alarms another person.

Ind. Code § 7.1-5-1-3(a). Gebrehiwet was specifically charged under Indiana Code section 7.1-5-1-3(a)(4). Gebrehiwet does not argue that he was not intoxicated in a public place. Instead, he contends that the evidence was insufficient to prove beyond a reasonable doubt that he harassed, annoyed, or alarmed the bouncer. We disagree and find that the facts do demonstrate that Gebrehiwet was harassing, annoying, or alarming another person, per section (a)(4) of the public intoxication statute.

[17]   When Paul attempted to send Gebrehiwet out of the Pub's side door, Gebrehiwet stopped in the doorway, pivoted, and tried to slam the door on Paul. At the same time, Gebrehiwet threw a beer bottle at Paul, hitting the

bouncer in the temple. Paul testified that Gebrehiwet began to show signs of aggression, and Paul felt compelled to push Gebrehiwet out of the doorway and onto the sidewalk. As Paul describes the situation, "[Gebrehiwet] was showing signs of aggression. He had already hit me. So, I didn't know what else he was going to do. I was defending myself and I just got him out of the way." Bench Trial, Vol. II at 12. A police officer who had been eating in the Pub intervened. Paul was so upset by the encounter with Gebrehiwet that he had to walk away from the situation and calm himself.

[18] In finding Gebrehiwet guilty of both battery resulting in bodily injury and Class B misdemeanor public intoxication, the court emphasized:

> I do take into consideration counsel's argument as to the duplicative use of the evidence to find him guilty in count one and attempting to use the same in count two as it pertains to him throwing the bottle and the argument that that bottle throwing was as to the harassing, annoying or alarming nature of Paul Carroll; however, *based on [Paul]'s testimony alone – it went beyond just a little bit more to the throwing of the bottle just that this individual attempted to close the door. He was unaware if these things could go forward to the point where he had to push the defendant outside of the bar and stand over him to make sure that nothing went down. . . .* [Paul] was unsure how this situation could escalate and where it could go from there. . . . *[T]he fact that his attitude and demeanor switched from being compliant to non-compliant and [Paul] testified that he felt compelled to stand over the defendant until law enforcement came because he was unsure if this was going to escalate or what was going to happen*[,] I do find [the] State met their burden as to counts one and two . . . .

*Id.* at 29-31 (emphasis added).

Gebrehiwet became aggressive, slammed a door, and alarmed Paul to such an extent that Paul felt compelled to push Gebrehiwet out of the doorway and onto the sidewalk because Paul "didn't know what else [Gebrehiwet] was going to do." *Id.* at 12. Paul was so upset by the encounter that he needed time to calm himself. Based on these facts, we cannot say that the evidence presented by the State is insufficient to allow a reasonable trier of fact to conclude that Gebrehiwet was in a public place in a state of intoxication and harassed, annoyed, or alarmed another person. Accordingly, we conclude that the evidence is sufficient to support Gebrehiwet's conviction for Class B misdemeanor public intoxication; and, the trial court's denial of Gebrehiwet's Trial Rule 41(B) motion for involuntary dismissal of the public intoxication charge was not clearly erroneous, as the State's evidence from its case-in-chief does not "point[ ] unerringly to a conclusion different from the one reached" by the trial court on Gebrehiwet's motion. *See Thornton–Tomasetti Eng'rs,* 851 N.E.2d at 1277.

# Conclusion

The trial court's denial of Gebrehiwet's Trial Rule 41(B) motion was not clearly erroneous. The State presented sufficient evidence to support Gebrehiwet's conviction for Class B misdemeanor public intoxication beyond a reasonable doubt. Thus, the judgment of the trial court is affirmed.

Affirmed.

Bradford, C.J., and Altice, J., concur.