James **CHILDERS**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 46A04–0401–CR–58.

Court of Appeals of Indiana.

Aug. 17, 2004.

Donald W. Pagos, Michigan City, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant James Childers ("Childers") appeals his convictions of four counts of Check Fraud, Class D felonies,[1] and one count of Attempted Theft, a Class D felony.[2] We affirm.

### Issue

Childers presents for review three issues, which we have consolidated and restated as a single issue: whether there is insufficient evidence to support his convictions because the State failed to establish that: (a) Childers acted with intent to defraud Fifth Third Bank; (b) Fifth Third Bank is a "financial institution" as defined in the check fraud statute; or (c) Childers presented "checks."

### Facts and Procedural History

Childers's parents, Ron and Penny Childers, maintained a checking account at Fifth Third Bank located in Michigan City, Indiana ("the Bank"), into which they deposited insurance claim proceeds and their Social Security checks. Ron and Penney Childers listed both their sons as joint accountholders; however, Penny informed Childers that she had restricted his access to the checking account.

Childers devised a scheme to secure funds by presenting falsified "comcheks"

---

1. Ind.Code § 35–43–5–12.

2. Ind.Code §§ 35–43–4–2; 35–41–5–1.

at the Bank, which would ultimately be dishonored, prompting set-off from the funds in the joint checking account. Comdata Network, Inc., a third-party billing company serving the transportation industry, issues "comcheks." With a proper authorization number, the holder may present the comchek and receive cash. The comcheks bear the notations "This draft is not valid and will not be honored without obtaining an authorization number before cashing or accepting for payment" and "Payable at Norwest Bank Grand Junction—Downtown N.A." (State's Ex. C–2) The comcheks also include a directive to call a toll-free telephone number before honoring the comchek.

Childers presented a series of falsified comcheks at the Bank and received cash in return. The comcheks were eventually dishonored, and the Bank attempted to offset funds from the joint checking account. However, the checking account was already depleted. Childers was arrested at the drive-through lane at the Bank when he attempted to cash a fifth comchek.

Childers was charged with four counts of Check Fraud, class D felonies, under Cause No. 46D04–0210–FD–1957. He was separately charged under Cause No. 46D04–0210–FD–1980 with Check Fraud, a class D felony, Attempted Check Fraud, a Class D felony and Attempted Theft, a class D felony. The charges were consolidated, and Childers' jury trial commenced on September 24, 2003. On September 26, 2003, Childers was found guilty of all the charges against him except check fraud charged under Cause No. 46D04–0210–FD–1980.

The trial court merged the Attempted Check Fraud and Attempted Theft convictions and sentenced Childers as follows: one year on the first three counts of check fraud, six months on the fourth count of check fraud and six months on the attempted theft count. The sentences were to be served consecutively, for an aggregate sentence of four years. Childers now appeals.

## Discussion and Decision

### A. Standard of Review

Childers claims that the State did not establish his intent to defraud the Bank, because he anticipated that funds received upon cashing the comcheks would be offset from the joint checking account. Too, he claims the State did not establish that the Bank is a "financial institution," as defined in Indiana Code Section 35–43–5–12. Finally, he argues that comcheks are not checks, drafts or orders contemplated by the check fraud statute.

When reviewing a claim of insufficiency of the evidence, we consider only the evidence most favorable to the judgment and the reasonable inferences that can be drawn therefrom. *Dillard v. State,* 755 N.E.2d 1085, 1089 (Ind.2001). We do not reweigh evidence or assess witness credibility. *Id.* The conviction will be affirmed unless we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Clark v. State,* 728 N.E.2d 880, 887 (Ind.Ct.App. 2000), *trans. denied.*

### B. Analysis

To convict Childers of Check Fraud, as charged, the State was required to establish that Childers "knowingly or intentionally obtained property, through a scheme or artifice, with intent to defraud by issuing or delivering a check, a draft, an electronic debit, or an order on a financial institution: knowing that the check, draft, order or electronic debit will not be paid or honored, or using a false or an altered check, draft order or electronic instrument." *See* Ind.Code § 35–43–5–12.

■ To convict Childers of Attempted Theft, as charged, the State was required to establish that Childers knowingly or intentionally took a substantial step toward exerting unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use. *See* Ind.Code §§ 35–43–4–2 and 35–41–5–1. A "substantial step" is any overt act beyond mere preparation and in furtherance of intent to commit an offense. *Asghar v. State*, 698 N.E.2d 879, 883 (Ind.Ct.App.1998), *trans. denied.*

### 1. Intent to Defraud

■ In support of his assertion that he did not intend to defraud anyone, Childers asks this Court to consider the evidence that he accurately provided the Bank with his name, telephone number, and driver's license number, so that the Bank could offset from the checking account funds.

We are not persuaded by Childers' argument that he intended no loss to the Bank. Even if the Bank had been able to recoup the funds issued upon the presentation of the comcheks bearing false authorization numbers, this is not dispositive of whether Childers intended to "defraud" the Bank. Although the check deception statute does not define "defraud," the Securities Regulation definition of "defraud" embodied in Indiana Code Section 23–2–1–1 offers guidance. Indiana Code Section 23–2–1–1(d) provides in pertinent part:

"Fraud," "fraudulent," "deceit," and "defraud" means a misrepresentation of a material fact, a promise or representation or prediction not made honestly or in good faith, or the failure to disclose a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

The evidence presented by the State shows that each of the comcheks embodied a material misrepresentation, specifically, a false authorization number. Thus, even if the Bank had been only temporarily deprived of its funds, the deprivation was accomplished by deception. The State presented sufficient evidence from which the jury could reasonably infer that Childers, on four separate occasions, knowingly or intentionally "defrauded" the Bank and, on a fifth occasion, took a substantial step toward exerting unauthorized control over property of the Bank.

### 2. Evidence that Fifth Third Bank is a Financial Institution

■ Childers claims that the State failed to establish that the Bank met the definition of a "financial institution" according to the check deception statute. Indiana Code Section 35–43–5–12(a) provides: "As used in this section, 'financial institution' refers to a state or federally chartered bank, savings bank, savings association, or credit union." In Childers' view, the bank tellers' failure to testify "as to the status of Fifth Third Bank," is a fatal omission. "Bank" is not more specifically defined in the Indiana Criminal Code. However, "bank" is defined in the Indiana Uniform Commercial Code as "a person engaged in the business of banking including a savings bank, savings association, credit union and trust company." Ind. Code § 26–1–4.1–105(2).

The State's witnesses did not testify, in precise terms, as to the nature of the Bank or its charter. However, lead teller Juliana Blewett testified that she handled deposits and that she cashed checks and comcheks upon verification of funds. She described "standard operating procedures at the Bank" and testified: "That's what I've been taught at this bank institution where I work." (Tr. 98.)

Several evidentiary exhibits indicate that the Bank issues bank statements, rec-

ords account deposits, withdrawals, and interest computations, makes mortgage loans and is an FDIC member. Finally, the affidavit of Risa Yost declared:

> I Risa Yost of Fifth Third Bank being a custodian of business records for said bank certify that the attached is a fair and accurate duplicate of a record kept in the course of our regularly conducted business activity and that it was the regular practice of Fifth Third Bank to make said record.

(State's Ex. D) Accordingly, there is sufficient evidence to permit the jury to infer that the Bank was engaged in the business of banking and was a financial institution within the meaning of the check fraud statute.

### 3. Evidence that Checks were Presented

Finally, Childers claims that the State failed to establish that he presented "checks" as charged, but "at best" showed that he presented "a counter draft at a bank." Appellant's Br. at 10.

"Check" is not defined in our criminal code. The Indiana Uniform Commercial Code defines a "check" as "a draft, other than a documentary draft, payable on demand and drawn on a bank; or a cashier's check or teller's check." Ind.Code § 26–1–3.1–104(f). Black's Law Dictionary defines, in pertinent part, a "check" as "[a] draft drawn upon a bank and payable on demand, signed by the maker or drawer, containing an unconditional promise to pay a sum certain in money to the order of the payee." *Id.* at 123 (abridged 5th ed.1983).

Likewise, "draft" is not defined in the Indiana Criminal Code. The Indiana Uniform Commercial Code provides: "An instrument is a 'note' if it is a promise and is a 'draft' if it is an order." Ind.Code § 26–1–3.1–104(e). Black's Law Dictionary defines, in pertinent part, a "draft" as "[a] written order by the first party, called the drawer, instructing a second party, called the drawee (such as a bank), to pay a third party, called the payee." *Id.* at 258.

Because the comcheks were drawn upon Comdata Network, Inc., which is not a bank, the evidence showed that Childers presented a form of drafts other than checks. A variance is an essential difference between proof and pleading. *Wessling v. State,* 798 N.E.2d 929, 937 (Ind.Ct.App.2003). Not all variances between allegations in the charge and the evidence at the trial are fatal. *Mitchem v. State,* 685 N.E.2d 671, 677 (Ind.1997). The test to determine whether a variance is fatal is as follows:

(1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;

(2) will the defendant be protected in the future criminal proceeding covering the same event, facts and evidence against double jeopardy?

*Id.* Failure to make a specific objection at trial waives any material variance issue. *Hall v. State,* 791 N.E.2d 257, 261 (Ind.Ct.App.2003). Childers did not object to the variance at trial, and has thus waived the issue. Moreover, he does not explain how he was misled by the variance in the preparation and maintenance of his defense, or prejudiced thereby.

In light of the foregoing, there is sufficient evidence to support Childers' convictions of Check Fraud and Attempted Theft.

Affirmed.

SHARPNACK, J., and MAY, J., concur.