**Gina WILLIAMS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0801–CR–44.**

Court of Appeals of Indiana.

Aug. 27, 2008.

Transfer Denied Oct. 29, 2008.

Amy Karozos, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Gina Williams appeals her convictions for Forgery, a Class C felony, and Attempted Theft, as a Class D felony, following a bench trial. Williams raises a single issue for our review, which we restate as the following three issues:

1. Whether Williams' conviction for attempted theft is barred by Indiana's prohibitions against double jeopardy.

2. Whether the trial court's denial of Williams' motion for involuntary dismissal, pursuant to Indiana Trial Rule 41(B), was clearly erroneous.

3. Whether the State presented sufficient evidence to support Williams' convictions.

We affirm in part and reverse and remand in part.

### FACTS AND PROCEDURAL HISTORY

On December 8, 2006, Amanda Ranger's checkbook was stolen. Ranger's check number 1050 was included in the checkbook. Ranger did not report the theft to police. Rather, three days after the theft she closed her checking account.

On March 10, 2007, Williams opened a new checking account with Old National Bank ("Old National").[1] And on March 19, Williams attempted to deposit Ranger's check number 1050 into her new account. The check was in the amount of $1,050, and purported to bear Ranger's signature. Because of the size of the check and the fact that Williams' checking account was only recently opened, Old National's service representative, Rebecca Dickerson, placed a hold on the check. Dickerson informed Williams that a hold would be placed on the check and that it could take up to seven days to clear. Williams proceeded to deposit the check.

Around April 11, Indianapolis Metropolitan Police Officer Barbara Bertram, a financial crimes investigator, began to investigate Williams' presentation of Ranger's check to Old National. Officer Bertram spoke with employees of Old National, reviewed surveillance video, and spoke with Ranger. Ranger informed Officer Bertram that she had closed her checking account following the theft of her checkbook.

On April 27, 2007, the State charged Williams with forgery, a Class C felony, and attempted theft, as a Class D felony.

---

1. The only part of the record that indicates when Williams opened her account with Old National is the State's affidavit for probable cause, which was not admitted into evidence during Williams' trial. Nonetheless, Williams does not dispute on appeal that her Old National account was opened nine days before the attempted deposit of Ranger's check. As such, we include that information, but only for background purposes.

The State's charge of forgery alleged as follows:

On or about March 19, 2007, [Williams] did, with intent to defraud, utter to Rebecca Dickerson a written instrument, that is: a check number 1050, ... in such a manner that said instrument purported to have been made by the authority of Amanda M. Ranger, who did not give authority[.]

Appellant's App. at 14. And the State's charge of attempted theft alleged:

Williams, on or about March 19, 2007, did attempt to commit the crime of Theft, which is to knowingly or intentionally exert unauthorized control over the property, that is: United States currency/money, of Old National Bank, with the intent to deprive Old National Bank of any part of the value or use of said property, by engaging in conduct, that is: Gina Williams presented a stolen check for the purpose of depositing it into her account to receive money, knowing she was not entitled to said check or money, which conduct constituted a substantial step toward commission of said crime of Theft[.]

*Id.* at 15.

At the ensuing bench trial, the State's only evidence that Williams committed the alleged crimes were the facts—testified to by multiple witnesses—that Williams possessed a stolen check, that Ranger did not sign the check, that Williams presented the check to Old National, and that the check was to be deposited in an account that Williams had recently opened. Ranger also testified that she had never before met Williams, and Officer Bertram stated that there was no other evidentiary reason "to think Gina Williams wrote this check ... [o]ther than it went into her account." Transcript at 19. Officer Bertram further agreed that she had "no information whatsoever that would tie Ms. Williams[,] be-

sides the fact she had this check later on[,] to the theft from Ms. Ranger's car." *Id.* at 20.

At the close of the State's case-in-chief, Williams moved the court for involuntary dismissal of the charges, pursuant to Trial Rule 41(B), on the grounds that the State did not present any evidence that she "knew that this was a stolen check." Transcript at 22. The court denied Williams' motion. Williams then testified in her own defense, stating that she obtained the check from a third party after she sold an Italian leather couch and sofa at a yard sale. However, the court did "not believ[e] any" of Williams' testimony, and the court found her guilty as charged. *Id.* at 52. The court then ordered her to serve two years suspended on each count, with the sentences to run concurrently. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Double Jeopardy

■ Before we address the issue raised by Williams on appeal, we determine *sua sponte* whether her conviction for attempted theft, as a Class D felony, is barred by double jeopardy. *See, e.g., Smith v. State,* 881 N.E.2d 1040, 1047 (Ind.Ct.App.2008) ("We raise this issue *sua sponte* because a double jeopardy violation, if shown, implicates fundamental rights."). As we have stated:

In *Richardson v. State* (1999) Ind., 717 N.E.2d 32, our Supreme Court established a two-part test for analyzing double jeopardy claims under the Indiana Constitution and concluded:

"two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict,

the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson, supra* at 49. Thus, even if there was no double jeopardy violation in the present case based upon the essential statutory elements of the crimes of forgery and theft, "a violation may still have occurred if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts." *Castillo v. State* (2000) Ind.App., 734 N.E.2d 299, 303 (quoting *Richardson,* 717 N.E.2d at 53), *reh'g denied, [summarily aff'd,* 741 N.E.2d 1196 (Ind.2001) ]. The " 'defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.' " *Castillo,* 734 N.E.2d at 303 (quoting *Richardson,* 717 N.E.2d at 53).

*Benberry v. State,* 742 N.E.2d 532, 537 (Ind.Ct.App.2001).

Here, the State's charging information tracked the statutory language for both the forgery charge and the attempted theft charge. To prove that Williams committed forgery, the State was required to show beyond a reasonable doubt that Williams, "with intent to defraud, ma[de], utter[ed], or possess[ed] a written instrument in such a manner that it purport[ed] to have been made: (1) by another person; (2) at another time; (3) with different provision; or (4) by authority of one who did not give authority." Ind.Code § 35–43–5–2(b) (2006). And to prove that she committed attempted theft, as a Class D felony, the State was required to show beyond a reasonable doubt that Williams "knowingly or intentionally" "engaged in conduct that constitute[d] a substantial step to-

ward" "exert[ing] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use." I.C. §§ 35–41–5–1 (attempt), 35–43–4–2(a) (theft).

It is clear that "the essential statutory elements of the crimes of forgery and [attempted] theft" do not create a double jeopardy issue. *See Benberry,* 742 N.E.2d at 537. Nonetheless, the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts. Rather, the State's exclusive evidence supporting both the forgery conviction and the attempted theft conviction was the fact that Williams presented the stolen and fraudulent check to Old National. Indeed, Officer Bertram expressly agreed with Williams' trial counsel that Officer Bertram had "no information whatsoever that would tie Ms. Williams[,] besides the fact she had this check later on[,] to the theft from Ms. Ranger's car." Transcript at 20.

 Thus, there is more than "a reasonable possibility" that the evidentiary facts used by the State to establish all of the essential elements of one offense were also used to establish all of the essential elements of the other offense, because the exact same facts were used against Williams on both charges. *See Richardson,* 717 N.E.2d at 53. As such, by entering convictions on both the forgery and the attempted theft charges, the trial court impermissibly punished Williams twice for the same offense. *See Castillo,* 734 N.E.2d at 303. Therefore, we reverse Williams' conviction for attempted theft, as a Class D felony. *See, e.g., Richardson,* 717 N.E.2d at 55 ("Because both convictions therefore cannot stand, we vacate the conviction with the less severe penal consequences. . . .").

### Issue Two: Trial Rule 41(B)

Williams characterizes her appeal as a question of whether the State presented sufficient evidence to support her convictions beyond a reasonable doubt. However, the substance of her appellate argument is that the trial court erred in denying her Trial Rule 41(B) motion for involuntary dismissal.[2] We review her appeal accordingly. *See, e.g., Goodrich v. Dearborn County (In re Sale of Real Prop.)*, 822 N.E.2d 1063, 1069 (Ind.Ct. App.2005) ("We have often indicated a preference of substance over form. In fact, Ind. Trial Rule 8(F) provides that: 'All pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of all procedural points.' ") (citations omitted), *trans. denied.*

Trial Rule 41(B) states, in pertinent part:

*Involuntary dismissal: Effect thereof.* After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. . . .

Our review of the trial court's Trial Rule 41(B) decision is well-established:

The grant or denial of a motion to dismiss made under Trial Rule 41(B) is reviewed under the clearly erroneous standard. *Taflinger Farm. v. Uhl*, 815 N.E.2d 1015, 1017 (Ind.Ct.App.2004). In reviewing a motion for involuntary dismissal, this court will not reweigh the evidence or judge the credibility of the witnesses. *Id.* We will reverse the trial court only if the evidence is not conflicting and points unerringly to a conclusion different from the one reached by the lower court. *Chemical Waste Mgmt. of Ind., L.L.C. v. City of New Haven*, 755 N.E.2d 624, 635 (Ind.Ct.App.2001).

*Thornton–Tomasetti Eng'rs v. Indianapolis–Marion County Pub. Library*, 851 N.E.2d 1269, 1277 (Ind.Ct.App.2006). In a criminal action, "[t]he defendant's [Trial Rule 41(B) ] motion is essentially a test of the sufficiency of the State's evidence." *Workman v. State*, 716 N.E.2d 445, 448 (Ind.1999). Notably, our review of the denial of the motion for involuntary dis-

---

**2.** Specifically, Williams' appellate brief discusses only the evidence presented by the State in its case-in-chief. In response, the State's brief on appeal focuses exclusively on Williams' testimony, which the trial court discredited, as support for her convictions. In her Reply Brief, Williams asserts that "[t]he State's argument would shift the burden of proof to the accused and violates due process." Reply at 3. We need not address whether the State's argument "shift[s] the burden of proof" because Williams properly preserved the Trial Rule 41(B) motion for involuntary dismissal, which, as discussed below, looks only to the State's evidence presented in its case-in-chief.

We also note that Williams' specific Trial Rule 41(B) argument to the trial court asserted that involuntary dismissal was proper because the State did not present any evidence that Williams "knew that this was a stolen check." Transcript at 22. We interpret Williams' argument as an attack on the State's evidence of the "intent to defraud" element of forgery. *See* I.C. § 35–43–5–2(b). However, for clarity we emphasize that "knowledge of falsity of a written instrument is not a separate essential element of the present crime of forgery." *Wendling v. State*, 465 N.E.2d 169, 170 (Ind.1984).

missal is limited to the State's evidence presented during its case-in-chief. *See Harco, Inc. v. Plainfield Interstate Family Dining Assocs.*, 758 N.E.2d 931, 938 (Ind.Ct.App.2001); *see also Stephenson v. Frazier*, 425 N.E.2d 73, 74 (Ind.1981) (" 'Our review of the denial of the motion for involuntary dismissal . . . is limited to an examination of the evidence most favorable to [the State] which was presented prior to the filing of the motion.' ") (quoting *F.D. Borkholder Co. v. Sandock*, 274 Ind. 612, 413 N.E.2d 567, 570 n. 2 (1980)), *superceded on other grounds*, Ind. Trial Rule 41(B) (as amended Nov. 4, 1981).

■ Here, the evidence presented by the State in its case-in-chief was sufficient to create a rebuttable inference that Williams acted with "intent to defraud." *See* I.C. § 35–43–5–2(b). "[I]ntent to defraud may be proven by circumstantial evidence," *McHenry v. State*, 820 N.E.2d 124, 127 (Ind.2005), and "will often include the general conduct of the defendant when presenting the instrument for acceptance," *Wendling v. State*, 465 N.E.2d 169, 170 (Ind.1984). "An intent to defraud involves an intent to deceive and thereby work a reliance and injury." *Id.*

Again, the State's evidence that Williams intended to defraud Old National consisted of testimony that Williams had recently opened a checking account with Old National and that she had presented Ranger's three-month old, forged check to Old National. The State presented no evidence of suspicious or questionable behavior by Williams at that time, other than her presentation of the forged check, even though the teller who received the check was called as a witness and Officer Bertram had reviewed Old National's surveillance video. Rather, the only evidence of Williams' behavior during the presentation of the check shows that she proceeded with the attempted deposit despite being told by Old National's teller that a hold would be placed on it.

While the State's evidence is not overwhelming, neither is it insufficient. Contrary to Williams' position on appeal, the mere act of presenting a forged check is sufficient to show that the defendant intended to deprive another of the value of that check. *See Ringley v. State*, 182 Ind. App. 424, 430, 395 N.E.2d 339, 342–43 (1979) (holding that the defendant's "act of presenting the check to be cashed is sufficient to show that [the defendant] intended to deprive [the intended payee] of his money."). As our Supreme Court has stated:

> The fact that the check was a forgery is clear; however, in its presentation to the teller we must determine whether there is sufficient evidence to prove the necessary intent. In *Fletcher v. State* (1874), 49 Ind. 124, this Court said:
>
> > " . . . The intent to defraud may be presumed from the general conduct of the defendant; and if the necessary consequences of the previous acts be to defraud some particular person, the jury may convict, notwithstanding that the person states his belief on oath that the prisoner did not intend to defraud him. Roscoe Crim. Ev. 561; *Regina v. Hill*, 8 C. & P. 274." *See also Brown v. State* (1953), 232 Ind. 227, 111 N.E.2d 808.
>
> We conclude the offering of the check to the teller with no instructions, when this act is generally construed in the banking industry as a request to exchange said check for cash, is sufficient conduct to warrant the jury to believe that the appellant intended to cash a forged instrument.

*England v. State*, 249 Ind. 446, 448–49, 233 N.E.2d 168, 170–71 (1968); *see also Bush v. State*, 251 Ind. 84, 87–88, 237 N.E.2d 584, 586–87 (1968); *Angel v. State*, 155 Ind.App. 242, 246–49, 292 N.E.2d 268, 271–

72 (1973) (discussing jury instructions on intent to defraud); 36 Am.Jur.2d Forgery § 53 (2008) ("from the fact of uttering and passing the instrument itself ... the jury can properly find the specific intent to defraud."). Here, the State's evidence from its case-in-chief does not "point[ ] unerringly to a conclusion different from the one reached" by the trial court on Williams' Trial Rule 41(B) motion to dismiss. *See Thornton–Tomasetti Eng'rs,* 851 N.E.2d at 1277. We affirm the court's ruling to deny that motion.

### Issue Three: Sufficient Evidence

■ Finally, we address whether the totality of the evidence presented at Williams' trial supports her conviction for forgery. Once the State rested its case-in-chief, Williams testified in her own defense. In doing so, she stated that she obtained the forged check from a third party after she sold some furniture at a yard sale. But the trial court expressly stated that it did "not believ[e] any" of Williams' testimony. Transcript at 52. On appeal, we cannot reweigh that evidence. *See Jones v. State,* 783 N.E.2d 1132, 1139 (Ind.2003). Accordingly, Williams failed to rebut the State's evidence that she intended to defraud Old National when she presented its teller with Ranger's forged check. Thus, we affirm her conviction for forgery, a Class C felony.

### Conclusion

Williams' conviction for forgery is supported by sufficient evidence and affirmed. However, because the same evidence was used to convict Williams of both forgery and attempted theft, as a Class D felony, her conviction for attempted theft must be reversed on double jeopardy grounds. Hence, we remand that issue to the trial court with instructions to vacate Williams' attempted theft conviction.

Affirmed in part, reversed and remanded in part.

MAY, J., and ROBB, J., concur.