**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 10 2012, 8:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIC K. KOSELKE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RAYMOND H. MIMS,                           )
                                           )
    Appellant-Defendant,                   )
                                           )
        vs.                              )    No. 49A04-1109-CR-499
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Plaintiff.                    )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable Stanley E. Kroh, Commissioner
Cause No. 49G03-1105-FC-33040

**May 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Raymond H. Mims appeals his conviction for forgery as a class C felony.[1]  Mims raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his conviction.  We affirm.

The facts most favorable to Mims's conviction follow.  At approximately 4:00 p.m. on May 10, 2011, Mims, who is twenty-four years old, and another man, entered Ace Cash Express in Marion County.  Mims approached Colleen Fries, who worked at Ace Cash Express, and asked if he could cash a check which he said his sister had given him.  Fries stated that Ace Cash Express could not cash the check because it was a third-party check.  Mims then walked out and went to a vehicle.  A woman and the man who had previously been in Ace Cash Express with Mims were sitting inside the vehicle.  The woman pulled out a checkbook, wrote a check, and handed the check to Mims.  Mims again entered Ace Cash Express and asked Fries if he could cash a personal check, and Fries responded affirmatively.

Fries noticed that the check was made out to Mims in the amount of $300 and contained the purported signature of Angela Stovall.  Mims gave Fries his identification, and Fries had Mims fill out an information card with his name, address, and phone numbers.  Fries asked Mims if he had any contact information for Stovall, and Mims stated that he worked with Stovall at S & S Furniture Warehouse and gave Fries a phone number.  Fries attempted to verify the phone number using a computer system which verifies numbers, but the phone number did not verify as the phone number for S & S Furniture Warehouse.  Fries then started to research the maker of the check to see if she

---

[1] Ind. Code § 35-43-5-2 (Supp. 2006).

could find a valid phone number. After she was able to do so, Fries called the number, spoke with Stovall, and asked her if she had issued the check to Mims. Stovall indicated that she had not written or signed the check and asked Fries to call the police. Fries then called the police, and while she was speaking with them, Mims asked Fries "what was taking so long," and Fries stated that she had to call her district manager because she had not been able to reach the maker of the check. Transcript at 65. "The longer it took for [Fries] to try to verify the check, the more [Mims] went in and out of the store," and Mims became "jittery" and "fidgety." Id. at 66. Mims eventually exited the store.

Indianapolis Metropolitan Police Officer Sydney McDaniel arrived on the scene and observed Mims walking through the parking lot away from Ace Cash Express. Officer McDaniel ordered Mims to stop, but he fled on foot. Officer McDaniel chased Mims on foot and used his radio to update other responding officers of his pursuit. Indianapolis Metropolitan Police Officer Santos Cortez was able to catch up with Mims behind a house and apprehend him. As Officer Cortez approached Mims, Mims was on a cell phone and stated "I'm caught. The police are here" and hung up the phone. Id. at 94.

In an amended information filed on August 30, 2011, the State charged Mims with: Count I, forgery as a C felony; and Count II, resisting law enforcement as a class A misdemeanor. At a bench trial, the court heard the testimony of Stovall, Fries, Officer McDaniel, and Officer Cortez consistent with the facts above. Mims testified that a man he met at the plasma center asked him to help move furniture, that he told the man he would charge $75, that later in the day he helped the man and woman move furniture, and

3

that the man and woman drove him to Ace Cash Express. When asked about the man, Mims testified that he "knew him just seeing him a lot of times at the plasma center." Transcript at 101. When asked if he knew the woman in the car who gave him the check for $300, Mims testified "[n]ot very well" and that he had "seen her a couple times . . . but . . . never had a conversation with her like that." Id. Mims testified that the man "was in the store with [him], so it kind of made [it] seem like the check was legit, like everything was all right." Id. at 107. Mims indicated that he did not "know that the woman in the car was not the woman on the check." Id. Mims testified that when he went outside, the woman in the car gave him the check for $300 and stated "[h]ere's your money." Id. at 102. Mims further testified that the woman "had told me she was going to pay me extra." Id. Mims also testified that the other man helped him with "one of the questions [Fries] asked about the company" and that the man "had went back out to the car and got a number from . . . the female in the car . . . [a]nd came back in and gave [Fries] the number." Id. at 103-104. Mims testified that he never told Fries that he worked with Stovall at S & S Warehouse.

Stovall testified that she did not write or sign the check which Mims had attempted to cash. Stovall also testified that she had never worked with Mims or at S & S Furniture Warehouse. Fries testified that she never spoke to the man with Mims. The trial court noted that it questioned the veracity of Mims's testimony and found Mims guilty on both counts. The court sentenced Mims to four years under Count I, with two years suspended, and 180 days under Count II, to be served concurrently. The court further ordered that Mims was to serve the first year of his executed sentence in the Department

4

of Correction followed by one year of work release and that he serve one year of his suspended sentence on probation.

The issue is whether the evidence is sufficient to sustain Mims's conviction for forgery as a class C felony.[2] When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. Id. We consider conflicting evidence most favorably to the trial court's ruling. Id. We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id. at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. Id.

The offense of forgery as a class C felony is governed by Ind. Code § 35-43-5-2(b), which provides as follows:

A person who, with intent to defraud, makes, utters, or possesses a written instrument in such a manner that it purports to have been made:

    (1)    by another person;

    (2)    at another time;

    (3)    with different provisions; or

    (4)    by authority of one who did not give authority;

---

[2] Mims does not challenge his conviction for resisting law enforcement as a class A misdemeanor.

5

commits forgery, a Class C felony.

Intent to defraud may be proven by circumstantial evidence which will often include the general conduct of the defendant when presenting the instrument for acceptance. Miller v. State, 693 N.E.2d 602, 604 (Ind. Ct. App. 1998) (citing Wendling v. State, 465 N.E.2d 169, 170 (Ind. 1984)). In its amended charging information, the State alleged that Mims "did, with intent to defraud, utter to [] Fries a written instrument, that is: a check . . . in such a manner that said instrument purported to have been made by the authority of Angela Stovall, who did not give authority . . . ." Appellant's Appendix at 36.

Mims argues that the State failed to prove beyond a reasonable doubt that he possessed the requisite intent to defraud and thus there was insufficient evidence as a matter of law to sustain his conviction for forgery. Mims recognizes that the "intent to defraud may be proven by circumstantial evidence" but asserts that "the circumstantial evidence in this case does not reasonably support an inference that [he] had the intent to defraud." Appellant's Brief at 5-6. Mims argues that he "could be characterized as quite naïve," that "[t]his was the first time in [his] life that he had tried to cash a check," and that "[w]hile in school he only reached the tenth (10th) grade and was in special education classes." Id. at 6. Mims argues that "[t]he couple that gave him the check owed him money for helping them move furniture," that he "actually saw the female pull the check box out of the glove box and write the check to him," that "[b]oth the man and the woman came into the store where [he] was attempting to cash the check," and that he "even provided identification, phone numbers, and a reference to the Ace Checking Cashing [sic] employee so she could verify them." Id. Mims further argues that "[i]t is

6

unlikely that in this scenario if [he] thought he was committing a criminal act that he would have provided identification, phone numbers and a reference and then waited for them to be verified" and that "[a]n inference from the circumstantial evidence cannot reasonably be drawn that [he] had the intent to defraud." Id.

The State's position is that Mims's appeal is merely a request for this court to reweigh the evidence and accept a theory the trial court rejected. The State maintains that following a thwarted attempt at cashing a check, Mims obtained a check from a woman in a vehicle for $300, attempted to have the second check cashed, and fabricated a story that he worked with the alleged signer of the check. The State points to the fact that Mims never offered to bring the woman from the vehicle, who he claimed to believe was Stovall, into the store to explain any misunderstanding, and that his consciousness of guilt was further proven by his flight once law enforcement arrived. The State also argues that Mims claimed the check was "payment for helping move furniture" and "yet the furniture job was worth $75 and the check was for $300 because the woman in the vehicle just said 'I'll pay you extra.'" Appellee's Brief at 7-8.

Mims's arguments on appeal invite us to reweigh the evidence presented at trial, which we cannot do. See Drane, 867 N.E.2d at 146. Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have inferred that Mims possessed the requisite intent to defraud when he presented Fries with Stovall's forged check and could have found Mims guilty of forgery as a class C felony. See Williams v. State, 892 N.E.2d 666, 672 (Ind. Ct. App. 2008) (noting the trial court did not believe the defendant's testimony, that on appeal we cannot

7

reweigh the evidence, and that the defendant failed to rebut the State's evidence that the defendant intended to defraud when she presented its teller with the forged check, and affirming the defendant's conviction for forgery as a class C felony), <u>trans.</u> <u>denied</u>.

For the foregoing reasons, we affirm Mims's conviction for forgery as a class C felony.

Affirmed.

BAKER, J., and KIRSCH, J., concur.