# FOR PUBLICATION



**FILED**
Dec 06 2013, 6:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHELLE ORR CARPENTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 77A01-1306-CR-293 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE SULLIVAN CIRCUIT COURT
The Honorable P.J. Pierson, Judge
Cause No. 77C01-1209-CM-542

**December 6, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Michelle Orr Carpenter appeals the trial court's revocation of her probation. Carpenter raises a single issue for our review, namely, whether the State presented sufficient evidence to demonstrate that she committed the alleged probation violation during the term of her probation. We reverse.

**FACTS AND PROCEDURAL HISTORY**

On September 28, 2012, the State arrested Carpenter for Class A misdemeanor resisting law enforcement and Class B misdemeanor battery. Less than one week later, on October 4, Carpenter pleaded guilty to the resisting law enforcement charge, the State dismissed the battery allegation, and the trial court sentenced her to 351 days suspended to probation. Among other things, the terms of her probation prohibited her from using any controlled substance without a prescription. The court also ordered Carpenter to provide a list of her prescription medications to her probation officer. According to Carpenter's list of prescriptions, she was taking Suboxone, a pain medication. On October 9, five days after having been placed on probation, Carpenter failed a drug test. According to the drug test results, Carpenter had ingested phenobarbital, a barbiturate for which she did not have a prescription.

The State filed a notice of probation violation on October 17, and the trial court held a fact-finding hearing on April 30, 2013. At that hearing, the State called Ed Walker, a pharmacist, to testify. According to Walker, Suboxone might produce a positive drug test for an opiate but not for a barbiturate. Walker further testified that phenobarbital is known to have a potential for abuse and that the half-life of

phenobarbital in the human body is three days. However, Walker further explained that, depending on the sensitivity of the drug test, one might test positive for phenobarbital up to three weeks after having ingested it. The State did not present any evidence regarding the sensitivity of the drug test it administered to Carpenter or the concentration levels of phenobarbital in her system as revealed by that test.

Carpenter also testified at the fact-finding hearing. According to her testimony, at the "end of May" she was an inpatient at the Fairbanks Recovery Center ("Fairbanks"), and she had been prescribed phenobarbital to aid in her recovery from drug addiction. Transcript at 17. She left Fairbanks after eight days, about four months before her October 4 drug test. Outside of her time at Fairbanks, she testified that she had never ingested phenobarbital.

The trial court found that Carpenter had violated the terms of her probation. As such, the court revoked her probation and ordered her to serve fourteen days of her originally suspended sentence. This appeal ensued.

**DISCUSSION AND DECISION**

Carpenter appeals the trial court's revocation of her probation. As our supreme court has explained:

> Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants. Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. An abuse of discretion occurs where the

3

decision is clearly against the logic and effect of the facts and circumstances.

Prewitt v. State, 878 N.E.2d 184, 188 (Ind. 2007) (citations omitted).

On appeal, Carpenter contends that there is no evidence that she used phenobarbital during the five days between her placement on probation and her drug test. "It is axiomatic that[,] to violate one's probation, one must perform some prohibited act, or fail to perform some required action, during the period of probation." C.S. v. State, 817 N.E.2d 1279, 1281 (Ind. Ct. App. 2004). In considering this issue, we note that "[a] probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence." Cox v. State, 706 N.E.2d 547, 551 (Ind. 1999). "We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses." Id. "If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation." Id.

Carpenter relies on C.S. in her appeal. In C.S., we held that the State had failed to show that the probationer had violated the terms of his probation by using cocaine during his probationary period. 817 N.E.2d at 1282. As we explained:

> Here the urine test was taken only five days after C.S. was placed on probation. We know that cocaine metabolites appear in the urine for some time period after cocaine has been ingested.
>
> The [S]tate produced no evidence whatever of what that time period might be. There was no prior screen establishing that C.S. was free of drugs, so that subsequent use might be inferred. There was not even any evidence of the amount, or concentration, of the metabolite in the urine.

Because the sample was taken only five days after C.S. was placed on probation, we are left to merely speculate whether he used cocaine before or after probation was imposed. We are unable to say that the evidence favorable to the decision, and the reasonable inferences therefrom, are sufficient to establish by a preponderance of the evidence that C.S. used cocaine at some time after he was placed on probation.

It follows that the decision revoking probation must be reversed . . . .

Id. at 1281-82.

Likewise here, the State presented no evidence of the time period in which Carpenter ingested phenobarbital. For example, Carpenter's probation officer did not give Carpenter a drug screen upon the commencement of her probation to establish what drugs, if any, Carpenter may have had in her system upon entering the probationary period. Had the probation officer done so, the trial court would have been able to infer subsequent use from the later drug screen. Alternatively, Walker, the State's witness and a pharmacist, testified that phenobarbital has a half-life of three days in the human body, and that it may be detected in a drug screen up to three weeks after it has been ingested. But the State did not present any evidence of the amount or concentration of the controlled substance it detected, which would have allowed the trial court to infer time of use. Rather, the State left the trial court to speculate that Carpenter had used phenobarbital during her probationary period, even though the State's own evidence demonstrated that Carpenter could have ingested the phenobarbital as early as three weeks before the test, which would have been as much as ten days before she had even been arrested. While these examples are not intended to be exhaustive of how the State may have met its burden of proof, they demonstrate that the State's evidence was not sufficient to support the revocation of Carpenter's probation.

5

The State asserts that C.S. is inapposite because, unlike C.S., here the probationer testified in her own defense. The State continues by alleging that Carpenter's failure to adequately explain the presence of phenobarbital in her system allowed the trial court to reasonably infer that she must have used the phenobarbital during the probationary period.[1]

The State asks too much from discrediting Carpenter's testimony. We agree that Carpenter's apparent lack of credibility allowed the trial court to infer that she illegally ingested phenobarbital and even that she ingested the phenobarbital more recently than "the end of May," as she had testified. See Transcript at 17. But that is not enough. The question here is whether Carpenter ingested phenobarbital between the start of her probation on October 4, 2012, and her drug test five days later on October 9. Even entirely discounting Carpenter's testimony, there is still no evidence from which one may infer when she ingested the phenobarbital. As such, we cannot agree with the State's attempt to distinguish C.S. from the instant appeal.

The State failed to present any evidence to demonstrate that Carpenter violated the terms of her probation by using phenobarbital during her probationary period. Even when viewed most favorably to the State, the evidence here was in equipoise, and it was no more likely that Carpenter ingested phenobarbital during her probationary period than

---

[1] In her reply brief, Carpenter asserts that the State's argument improperly shifts the burden of proof to her. This is incorrect. Carpenter did not move for involuntary dismissal, pursuant to Trial Rule 41(B), following the completion of the State's case-in-chief in the trial court. As such, the trial court was not obligated to look only to the State's evidence in determining the merits of the State's allegation, and on appeal we will "address whether the totality of the evidence presented" supports the trial court's judgment. Williams v. State, 892 N.E.2d 666, 670-72 (Ind. Ct. App. 2008), trans. denied.

it was that she ingested it before her probationary period.  Accordingly, we must reverse the trial court's decision to revoke Carpenter's probation.

Reversed.

BAKER, J., and CRONE, J., concur.