## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 13 2016, 8:25 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James D. Crum
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Wayne Wise, Sr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 13, 2016

Court of Appeals Case No.
29A02-1509-CR-1377

Appeal from the Hamilton
Superior Court

The Honorable Steven R. Nation,
Judge

Trial Court Cause No.
29D01-1412-FC-9933

**Robb, Judge.**

# Case Summary and Issues

[1] Following a bifurcated trial, Michael Wayne Wise, Sr., was convicted of check fraud as a Class C felony and found to be an habitual offender. Wise appeals, raising two issues, which we restate as (1) whether the trial court abused its discretion by admitting evidence in violation of Indiana Evidence Rule 404(b), and (2) whether the evidence is sufficient to support his conviction for check fraud. Concluding the trial court did not abuse its discretion and the evidence is sufficient, we affirm.

# Facts and Procedural History

[2] In 2014, Wise operated an auto repair business in Noblesville, Indiana. In March of that year, the Noblesville Police Department began investigating Wise's business for check fraud after he passed a number of bad checks to Prime Automotive Warehouse, Inc. ("Prime"). Wise ordered auto parts from Prime on March 14 and 17 and received the items in separate shipments on March 17 and 18. He paid for the merchandise with checks linked to an Ameriana Bank ("Ameriana") account that had been closed since May 23, 2012. When the checks were subsequently dishonored, Prime contacted the Noblesville Police Department.

[3] On April 1, Detective Timothy Hendricks obtained a search warrant for Wise's property, which authorized officers to seize (1) any Ameriana checks, checkbooks, or bank statements issued to "Michael Wise" for account number

0527688099, and (2) any of the items listed on the invoices detailing the deliveries made on March 17 and 18. State's Exhibit 1.[1] During the search of Wise's property, officers recovered "between 90 to 95 percent" of the almost $3,000 in merchandise delivered on March 17 and 18,[2] as well as two sets of Ameriana checks. Transcript at 162-63. Both sets of checks were issued for account number 0527688099, but they listed different addresses. One set of checks was issued to "Michael Wayne Wise" and listed an address in Greenfield, Indiana. State's Ex. 19. Another set was issued to "Main Street Automotive d/b/a Michael Wise" and listed the Noblesville address where Wise had been living since November 2013. State's Ex. 9; tr. at 242. Wise was not present when the officers searched his property.

[4] On April 7, Detective Hendricks returned to Wise's property in an attempt to locate Wise. Detective Hendricks entered the garage on the property and encountered a man who identified himself as "Josh Dawson." Tr. at 167. When Detective Hendricks told the man he was looking for Wise, the man said Wise was unavailable but provided a phone number where Wise could be reached. Detective Hendricks next walked to the residence on the property and knocked on the door. A woman answered, and after speaking with her, Detective Hendricks decided to go back to the garage, which then appeared

---

[1] Prior to obtaining the search warrant, Detective Hendricks acquired bank records from Ameriana showing Wise used Ameriana checks, account number 0527688099, to pay for the items he ordered from Prime in March 2014. Tr. at 154.

[2] Some of the other items were recovered from a pawnshop in Lawrence, Indiana.

empty. Detective Hendricks called out Wise's name, but no one answered. He then noticed the trunk of one of the vehicles parked inside the garage was slightly ajar and discovered the man who identified himself as "Josh" hiding inside. "Josh" was actually Wise.

[5] A week later, on April 14, Wise opened a business checking account with PNC Bank ("PNC") under the name "Michael Wise Sr. d/b/a Auto Smart & All Pro Towing." State's Ex. 20. By June, the account was overdrawn and closed. In the interim, Wise opened a business account with O'Reilly Auto Parts ("O'Reilly"), which allowed Wise to order parts for delivery. He paid for each order upon delivery because he did not qualify for a line of credit. From June to July, Wise wrote six checks from the closed PNC account to pay for deliveries made by O'Reilly: (1) $143.88 on June 20, (2) $193.50 on June 27, (3) $27.10 on June 30, (4) $354.80 on June 30, (5) $332.10 on July 1, and (6) $211.97 on July 3. It is unclear from the record when exactly the PNC account was closed, but each of the six checks Wise issued to O'Reilly was returned because the account was closed.[3]

[6] In early July, an O'Reilly manager visited Wise's business to confront Wise about the dishonored checks. He told Wise he would turn the matter over to the prosecutor's office if Wise did not pay by the end of the month. Wise

---

[3] The PNC statement for May 1 to May 30 shows $241.89 in deposits, $106.45 in deductions, $72.00 in returned items fees, and an ending balance of $0.00. The statement for May 31 to August 18 shows no deposits, deductions, or fees and an ending balance of $0.00.

immediately paid for the $27.10 order, plus a $20.00 fee, but he never paid for the other deliveries. The manager returned to Wise's business three times during the month of July, but he never saw Wise again and eventually filed a bad check affidavit with the prosecutor's office.

[7] Finally, in November, Wise ordered $1,511.57 in oil products from Walker Oil, Inc. ("Walker") and paid for the order with another check from the closed PNC account. When the check was subsequently dishonored, Walker was unable to reach Wise with the phone numbers he provided and ultimately contacted the prosecutor's office.

[8] Relevant here, the State charged Wise with check fraud, a Class D felony, and check fraud with a prior conviction, a Class C felony, for the checks he issued to O'Reilly in June. The State also alleged he was an habitual offender. Prior to trial, the State filed its notice of intent to offer evidence under Indiana Evidence Rule 404(b), which the trial court permitted as to the checks Wise issued to Prime in March, to O'Reilly in July, and to Walker in November.[4] A bifurcated trial was held in July 2015. When the State offered evidence of Wise's other bad checks, the trial court admitted the evidence over defense objection. At the conclusion of the first phase of the trial, a jury found Wise guilty of check fraud as a Class D felony. Wise waived his right to a jury trial for the second phase. The trial court found him to be an habitual offender and

---

[4] The State charged each of these occurrences under separate cause numbers.

guilty of check fraud as a Class C felony. The trial court merged the Class D felony and entered judgment of conviction on the Class C felony and the habitual offender enhancement. The trial court ordered Wise to serve eight years in the Department of Correction, enhanced by an additional eight years, for an aggregate sentence of sixteen years executed in the Department of Correction. This appeal followed.

# Discussion and Decision

## I. Admission of Evidence

### A. Standard of Review

A trial court has broad discretion in ruling on the admissibility of evidence. *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011). We review its rulings for abuse of discretion, which occurs only if the decision was clearly against the logic and effect of the facts and circumstances. *Id.* We will not reverse the trial court's decision to admit evidence if the decision is sustainable on any ground. *Crawford v. State*, 770 N.E.2d 775, 780 (Ind. 2002).

### B. Crimes, Wrongs, or Other Acts

Wise contends the trial court erred in admitting evidence of the checks he issued to Prime in March and Walker in November. He argues the evidence should have been excluded under Evidence Rule 404(b) because it shows nothing more than his "occasional propensity to write bad checks." Appellant's Brief at 10. "Rule 404(b) is designed to prevent the jury from making the

forbidden inference that prior wrongful conduct suggests present guilt."
*Halliburton v. State*, 1 N.E.3d 670, 681 (Ind. 2013) (citation and internal
quotation marks omitted). Evidence Rule 404(b)(1) provides, "Evidence of a
crime, wrong, or other act is not admissible to prove a person's character in
order to show that on a particular occasion the person acted in accordance with
the character." This type of evidence may be admissible for other purposes,
however, "such as proving motive, opportunity, intent, preparation, plan,
knowledge, identity, absence of mistake, or lack of accident." Ind. Evidence
Rule 404(b)(2). These exceptions "apply to evidence of acts committed both
before and after the crime charged." *Hazelwood v. State*, 609 N.E.2d 10, 16 (Ind.
Ct. App. 1993), *trans. denied*; *see also Southern v. State*, 878 N.E.2d 315, 321-22
(Ind. Ct. App. 2007) (noting the wording of Rule 404(b) "does not suggest that
it only applies to prior bad acts and not subsequent ones"), *trans. denied*. In
assessing the admissibility of Rule 404(b) evidence, the trial court must (1)
determine that the evidence of other crimes, wrongs, or acts is relevant to a
matter at issue other than the defendant's propensity to commit the charged
offense, and (2) balance the probative value of the evidence against its
prejudicial effect under Evidence Rule 403. *Bishop v. State*, 40 N.E.3d 935, 951
(Ind. Ct. App. 2015), *trans. denied*.

[11]     Evidence may be admitted to prove intent "when a defendant goes beyond
merely denying the charged culpability and alleges a particular contrary intent,
whether in opening statement, by cross-examination of the State's witnesses, or
by presentation in defendant's own case-in-chief." *Lafayette v. State*, 917 N.E.2d

660, 663 (Ind. 2009). Intent is a mental state; "absent an admission, the jury must resort to the reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, there exists a showing or inference of the required criminal intent." *Germaine v. State*, 718 N.E.2d 1125, 1132 (Ind. Ct. App. 1999), *trans. denied.* "An intent to defraud involves an intent to deceive and thereby work a reliance and injury." *Williams v. State*, 892 N.E.2d 666, 671 (Ind. Ct. App. 2008) (citation omitted), *trans. denied*.

[12]     At trial, defense counsel conceded Wise wrote bad checks and knew the accounts were closed but argued Wise never intended to defraud O'Reilly. *See* Tr. at 149-50. Defense counsel maintained Wise was simply not a good businessman. Because Wise specifically alleged he did not intend to defraud O'Reilly, we conclude the checks Wise issued to Prime and Walker were properly admitted to prove intent. *See Lafayette*, 917 N.E.2d at 663. Wise issued two checks totaling $2,735.21 from the Ameriana account that had been closed for almost two years.[5] Two weeks after the police executed a search warrant to investigate Wise for passing bad checks from the closed Ameriana account, Wise opened a new checking account with PNC under a different name. The checks linked to the Ameriana account indicated the name of

---

[5] We would also note one of the sets of Ameriana checks found on Wise's property listed his Noblesville address—an address he established over a year after the Ameriana account was closed.

Wise's business was "Main Street Automotive," State's Ex. 9, but he opened the PNC account under the name "Auto Smart & All Pro Towing," State's Ex. 20. Thereafter, Wise deposited less than $250.00 into the PNC account but issued six checks to O'Reilly in a two-week period, totaling $1,263.35. Each of those checks was returned because the PNC account was closed. Several months later, Wise again passed a check from the closed PNC account to pay for $1,511.57 in oil products from Walker.

[13] Evidence of these transactions strongly suggests Wise was not merely floundering in his attempt to run a business but actively engaged in a scheme to obtain tools and parts by passing bad checks. And given the probative value of this evidence, we cannot conclude the checks should have been excluded as unduly prejudicial. *See Hazelwood*, 609 N.E.2d at 16 ("Despite extrinsic evidence's tendency to show bad character or criminal propensity, it is admissible so long as it makes the existence of an element of the crime charged more probable than it would be without the evidence."). The trial court did not abuse its discretion by admitting evidence of the checks Wise issued to Prime and Walker because Wise placed his intent in issue, and the transactions tend to prove intent.

## II. Sufficiency of Evidence

### A. Standard of Review

[14] Wise also contends the evidence is insufficient to support his conviction for check fraud. In reviewing the sufficiency of the evidence, we consider only the

probative evidence and reasonable inferences that support the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We consider conflicting evidence most favorably to the trial court's ruling and will affirm the conviction unless no reasonable fact-finder could find the elements of the offense proven beyond a reasonable doubt. *Id.* "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.*

## B. Check Fraud

[15] A person commits check fraud as a Class D felony when he knowingly obtains property, through a scheme or artifice, with intent to defraud, by issuing or delivering a check, knowing that the check will not be paid or honored by the financial institution upon presentment in the usual course of business. Ind. Code § 35-43-5-12(b)(1)(A) (1998). The offense is a Class C felony if the person has a prior unrelated conviction for check fraud. *Id.*

[16] During trial, the State presented evidence of Wise's transactions with Prime, O'Reilly, and Walker, occurring between March and November of 2014, but only the checks he issued to O'Reilly in June provided the basis for the charge in this case. Wise argues the evidence is insufficient to support his conviction for check fraud because there was no evidence showing he acted with intent to defraud. He contends the State proved check deception at best because "[t]he inference that could be drawn from the evidence was simply that [he] was a poor business man." Appellant's Br. at 7; *see also* Ind. Code § 35-43-5-5(a)

(2003) (providing a person who knowingly issues a check for the payment of or to acquire money or other property, knowing that it will not be paid or honored by the credit institution upon presentment in the usual course of business, commits check deception, a Class A misdemeanor).

[17] Although the check fraud statute does not define "defraud," we have previously looked to the Indiana Uniform Securities Act, which defines "defraud" as "a misrepresentation of a material fact, a promise or representation or prediction not made honestly or in good faith, or the failure to disclose a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Childers v. State*, 813 N.E.2d 432, 435 (Ind. Ct. App. 2004) (quoting Ind. Code § 23-2-1-1(d) (2000), *accord* Ind. Code § 23-19-1-2(9)). In addition, we have stated intent to defraud may be proven by circumstantial evidence and presumed from the general conduct of the defendant. *Williams*, 892 N.E.2d at 671.

[18] First, Wise issued two checks from the Ameriana account that had been closed for almost two years. These transactions gave rise to the search warrant for Wise's property, and when the police attempted to speak with Wise after the search, he lied about his name and hid. A week later, Wise opened a new account with PNC under a different business name. He deposited less than $250.00 into the PNC account during the month of May and made no deposits in the following months. Nonetheless, Wise issued six PNC checks to O'Reilly in a two-week period, four of which are dated in June, for a total of $719.28: (1) $143.88 on June 20, (2) $193.50 on June 27, (3) $27.10 on June 30, and (4)

$354.80 on June 30. All of the checks were returned because the PNC account was closed. Wise paid for the $27.10 order when the O'Reilly manager confronted him in early July, but the manager could not locate Wise after this and never received payment for the other deliveries. Several months later Wise issued yet another check from the closed PNC account—this time to Walker, for $1,511.57. When this check was dishonored, Walker was unable to reach Wise with the phone numbers he provided.

[19] Each time Wise paid for an order with a check, he implicitly represented the check would be honored, notwithstanding the fact that his bank accounts were either empty or closed during most of the period in question. *See* Tr. at 149-50 (defense counsel conceding Wise knew the accounts were closed). When the checks were dishonored, Wise was evasive and continued to write bad checks. It is reasonable to infer from the nature of these transactions and Wise's general conduct that he intended to deceive, *see Williams*, 892 N.E.2d at 671, and made representations to O'Reilly in bad faith, *see Childers*, 813 N.E.2d at 435. Accordingly, we conclude the evidence is sufficient to support Wise's conviction for check fraud.

# Conclusion

[20] The trial court did not abuse its discretion by admitting evidence under Indiana Evidence Rule 404(b), and the evidence is sufficient to support Wise's conviction for check fraud. We therefore affirm.

Affirmed.

Barnes, J., and Altice, J., concur.